DAUGHERTY et ux. v. TOOMEY et ux.—222 S. W.
(2d) 195.

Eastern Section.   January 14, 1949.

Petition for Certiorari denied by Supreme Court, April 30, 1949.

R. A. Davis, of Athens, for appellants.

J. H. McSpadden and Frank K. Boyd, both of Athens, for appellees.

HOWARD, J.   This ejectment suit grows out of a boundary line dispute between adjoining property owners.

Appellants, A. T. Daugherty and wife, Flora Daugherty, are the owners of the property located at 101 Ingleside Drive, described as the west half of Lots 8 and 9, Block G., of the Ingleside Addition to the City of Athens. They acquired this property by purchase in 1945 from Frank DeLay, Executor, under the will of E. L. DeLay, deceased, and have occupied it as a home since that date.

Appellees, Allen D. Toomey and wife, Dorothy Mae Toomey, own and occupy the adjoining property at 103 Ingleside Drive, described as the east half of Lots 8 and 9.   They acquired this property by purchase in March, 1940, from Bertram Larson and wife.

The joint properties consist of a narrow strip of land lying between Ada Street on the east and Atlanta Street on the west, and the dividing line, according to the deeds and survey , is located midway between these two streets.

Between the two houses which front on Ingleside Drive appellants maintain a driveway leading to their garage which is located on the back of their lot.

In 1943 E. L. DeLay decided to build the garage now used by the Daughertys. The east end of this garage is located about thirty inches west of the Toomey property line. At or about that time the Toomeys were also building a garage on their lot, and DeLay proposed to them that it would look better if the inside ends of the two garages were joined so as to eliminate a narrow opening between the garages. He proposed that the west end of the Toomey garage be attached to the east end of his garage and that this could be done if the Toomeys would contribute to the cost of the east wall of his garage. This offer was acceptable to the Toomeys and the proof is undisputed that they contributed their portion to the cost of the wall and the garages were joined together as agreed upon. This arrangement appears to have been entirely satisfactory until shortly before this suit was filed when a dispute arose between the present property owners over the location of the boundary line.

In 1947, appellants proposed to erect a curb, or wall, on the dividing line between their property and the property of Toomeys. The Larsons, who previously owned the Toomey property, had made several flower beds near the property line, and upon having a survey made, appellants learned that these flower beds were on their property. The Toomeys objected to the location where appellants proposed to build the curb, insisting that the flower beds were on their property and that the curb, when completed, would be several inches over on their lot.

Thereupon, the Daughertys filed their bill to have the Court fix the boundary line and settle the issues between the contending parties and after considering the proof the Chancellor sustained their bill and fixed the dividing line midway between Ada Street on the east and Atlanta

Street on the west, identified as line A B on the map attached as Exhibit A to the bill. The Chancellor further held that appellees had acquired an interest in the garage of appellants by reason of an executed license, of which appellants had notice when they purchased their property; that appellees had expended their labor and money on permanent improvements in good faith on the invitation and encouragement of DeLay; and that appellants are now estopped from interfering with appellees in the use and enjoyment of their investment.

From the above portion of the Chancellor's decree appellants have appealed in error to this Court where it is insisted that the Chancellor erred in denying them full possession of their premises.

The proof is undisputed that appellants had notice of oral agreement which DeLay, their predecessor in title, made with appellees when the garage was built and joined together in 1943.

On the question of notice, R. C. Hornsby, the real estate agent, testified as follows: (Tr. p. 104)

"Q 16 Was anything said to Mr. Daugherty in reference to the line in the garages?

"A I told Mr. Daugherty there had been some kind of an agreement between DeLay and Toomey over the garages.

"Q 17 Do you remember what statement if any Mr. Daugherty made when you gave him that information?

"A No."

Vol. 53 C. J. S., Licenses Sec. 90, subsec. b, page 816 reads as follows:

". . . Where the licensee has acted under the license in good faith, and has incurred expense in the execution of it, by making valuable improvements or otherwise,

it is regarded in equity as an executed contract and substantially an easement, the revocation of which would be a fraud on the licensee, and therefore the licensor is estopped to revoke it, particularly where the licensor joins in the enterprise and accepts the benefits of the licensee's labor and expense; and the rights of the licensee will continue for as long a time as the nature of the license calls for. It has also been held that the license cannot be revoked without reimbursing the licensee for his expenditures or otherwise placing him in statu quo.''

We think that the law as declared by our Supreme Court in Heiskell v. Cobb, 58 Tenn. 638, is controlling here. In that case Chief Justice Nicholson in his opinion said:

''It follows that although Heiskell could not acquire an easement in the land and water by mere operation of the parol license, yet by reason of his adverse possession of seven years he acquired such a right as would enable him to defend his possession at law, and to protect it in equity against invasion.

''But his claim to relief rests upon another ground which is equally conclusive. It is fully proven not only that the new dam was built by the license of Sylvester Cobb, but that he stood by, encouraged and assisted him in expending his labor and money in making valuable and permanent improvements upon the faith of the license. This furnishes a clear case for the application of the doctrine of equitable estoppel, which is in operation not only against Cobb himself, but his privies.''

See also LaRue v. Green County Bank, 179 Tenn. 394, 166 S. W. (2d) 1044.

Though appellants procured an estimate of what it would cost to remove and rebuild appellees' garage, they have made no offer to pay the expenses of having

this done; nor have they offered to reimburse appellees for the expenses incurred in the construction of the garage. Since the appellant had notice of the agreement between appellees and DeLay, we think that to require appellees to remove and rebuild a part of their garage without being reimbursed therefor by appellants would be manifestly inequitable, and that if the appellants seek equity they should be willing to do equity.

We find no merit in the assignments of error and the decree of the Chancellor will be affirmed at appellants' costs.

McAmis and Hale, JJ., concur.