IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 20, 2000 Session

## CHRIS FARLEY v. CHARLES ELLIS, ET AL.

**A Direct Appeal from the Chancery Court for Crockett County**
**No. 7642      The Honorable George R. Ellis, Judge**

---

**No. W2000-00354-COA-R3-CV - Filed December 27, 2000**

---

Plaintiff sued defendants to enforce alleged oral agreement to convey real estate or alternatively for damages. The trial court found that the oral agreement violated the statute of frauds, but ordered, under the doctrine of equitable estoppel, the specific performance of the oral agreement. Defendants have appealed.

**Tenn.R.App.R. 3; Appeal as of Right; Judgment of the Chancery Court Reversed As Modified and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Mitchell G. Tollison, Humboldt, For Appellants, Charles Ellis and Wanda Borders Ellis

Jerald M. Campbell, Jr., Trenton, For Appellee, Chris Farley

### OPINION

Plaintiff, Chris Farley, filed a complaint on March 9, 1999, against defendants, Charles Ellis (hereinafter defendant or Ellis) and Wanda Borders Ellis (hereinafter Ms. Borders) seeking specific performance of an alleged oral agreement to convey real estate or in the alternative for money damages. The complaint alleges that the defendants, Charles Ellis and Dorothy Ellis, plaintiff's mother, were married in June 1990. In the summer or fall of 1993, defendant began asking the plaintiff to move from Arkansas to Crockett County, Tennessee, to help defendant care for plaintiff's mother. The complaint avers that in exchange for plaintiff doing this, Charles Ellis agreed to deed "some" acreage of land to plaintiff. The complaint further avers that Ellis continued asking plaintiff to move and, finally, in approximately June or July, 1994, plaintiff did begin improving the real property. He worked on clearing the land for nearly three months and lived there part of that time in a trailer in defendant's yard. Plaintiff further avers that subsequently he purchased a double-wide trailer, moved it on the property, and moved his family from Arkansas to the property. He alleges that he expended sums of money in placing improvements on the property

and spent many hours of labor improving the property. Plaintiff further avers that some time after doing this work, he requested the defendant to deed the property as he had agreed, but that instead, defendant "told plaintiff he could live on the property as long as he liked, so long as he paid the property taxes on the land." The complaint avers that plaintiff's mother and Ellis divorced and that plaintiff had paid the property taxes every year that he lived on the property since he was told to do so by the defendant, except for the 1998 property taxes, which Ellis paid before plaintiff knew that they were due. Plaintiff avers that in April of 1998, defendant, began telling the plaintiff that he must move himself and his mobile home from the real property, and also quit claimed the property to defendant, Wanda Borders Ellis, who was then Wanda Borders. Ms. Borders then made attempts to remove plaintiff from the property and filed a criminal trespass warrant against the plaintiff. The complaint alleges that the property was transferred to said Wanda Borders in an attempt to defraud the court and the plaintiff and prays that the conveyance be set aside. Plaintiff avers that defendant breached his contract with plaintiff by not transferring the property and prays that defendant be required to specifically perform the contract.

Alternatively, plaintiff seeks reimbursement for his labor and improvements on the real estate, for the losses he incurred by moving from Arkansas and for the cost of moving his home to another location. Alternatively, he prays that he be allowed to live on the property as long as he pays the taxes.

Defendants responded to the complaint by a motion to dismiss for failure to state a claim, a motion to strike the allegations concerning the alleged fraudulent transfer, and an affirmative defense of the statute of frauds. Defendants further answered the complaint by denying the material allegations thereof as to an agreement. Defendants also filed a counter-complaint seeking possession of the property and rental for the property from April 17, 1998 until plaintiff removes himself from the property at the rate of $150.00 per month.

A non-jury trial was held on September 27, 1999. Mr. Farley testified regarding the oral agreement as follows:

> But the property itself, I invested all the money into it. Charlie said, "Hey, you can put you a trailer up there. You can live there as long as want. I'm going to give you the property. Eventually, I'll deed it in your name."

> Me and my wife eventually started having trouble, as far as the marriage and stuff. You know, it wasn't nothing that we didn't breeze through later on. But he told me - - the exact words he said is, "Hey, if ya'll got a divorce, I don't want a bunch of scallywags living up there, so right now I'm going to hang on to the deed."

Once it became apparent to Mr. Farley that he was not going to receive the deed, he continued living on the property. Prior to the marriage of Ms. Borders to Ellis in June of 1999, Mr. Farley was called to testify in a custody dispute regarding Ms. Borders' child from a previous

marriage. The nature of his testimony was that Ms. Borders was living with Ellis. Subsequent to testifying, he received a letter from Ms. Rainwater, counsel for Ms. Borders, asking him to remove himself from the property.

Mr. Farley claimed to have spent fourteen thousand to fifteen thousand dollars in making improvements to the property, however, he did not have documentation to verify that amount. He stated that the improvements to the property at his expense include: a septic tank, a concrete driveway, a water line, dozer work, grass seed, trees, a concrete pad, an outbuilding, concrete sidewalks and molding. He also claims compensation for his labor in making these improvements. Regarding the property taxes on the land, Mr. Farley estimates they were $22.23 before he moved his trailer on the land and $232.00 after.

Mrs. Dorothy Ellis next testified, stating that she wanted her son and his wife and child to move to Crockett County. Charles Ellis said that they could have the place where Chris Farley now resides. Mr. Ellis told her two times that he was going to deed the land to her son, but after they had relocated, Mr. Ellis stated that he wanted to wait a while before changing the deed. Mr. Farley and his wife worked very hard to make the land level and attractive. Dorothy Ellis further testified that the terms of the agreement included that her son would receive the land, if he helped in taking care of her, as she had suffered two nervous breakdowns. Barbara Froio, Mr. Ellis's sister, testified that before Mr. Farley moved from Arkansas, her brother told her sometime in 1993 or 1994 that he had made a verbal agreement with Mr. Farley to give him a place to live.

Mr. Wayne B. Parlow, owner of Parlow Realty Company and Parlow Appraisal Services, testified on behalf of the defendants. Mr. Parlow stated that he had prepared an appraisal of the 5.62 acre tract of land deeded from Ellis to Ms. Borders on March 17, 1999, and determined that the value of the land was $15,000.00. Mr. Parlow estimated that the market rental value of the property was $150.00 per month, $1,800.00 annually.

Mr. Charles Ellis testified on his own behalf, denying that he told Mr. Farley that he could live on his land as long as he paid the taxes. He admits that he allowed Mr. Farley to live on the land so that Dorothy Ellis's grandchild could be near her, and stated that Mr. Farley never paid any rent while living on the property. Mr. Ellis had no intention of reimbursing Mr. Farley for improvements made on the land, because he benefitted from the improvements, as he was living on the land. Mr. Ellis denies that he encouraged, or asked Mr. Farley to move from Arkansas, and testified that he had no intention at any time of deeding the property to Mr. Farley. Mr. Ellis stated that the only thing that he had communicated to Mr. Farley regarding the land was that "while he was living there, he would pay the taxes. Not as long as you want to live there, no." Mr. Ellis testified that he conveyed the property to Ms. Borders in April of 1998, for the consideration of $10.00, but denies that the conveyance had any relation to a court order mandating that Ms. Borders's daughter not reside or be left alone with Mr. Ellis. Ms. Borders testified that she is the owner of the 5.62 acre tract and although she has no plans for the land, she wants Mr. Farley to leave, because she would rather have the land vacant.

On February 3, 2000, the trial court filed its decree which included finding of facts and conclusions of law. The court found that in the summer of 1993, Mr. Ellis made an offer to plaintiff that he would deed plaintiff land for a home in exchange for plaintiff relocating his family from Arkansas to Crockett County, Tennessee, to help Mr. Ellis with his wife, Dorothy Ellis. The trial court found that after one year, Mr. Farley accepted the offer, began improving the subject land, and relocated his family. After Mr. Farley fulfilled his part of the agreement, Mr. Ellis refused to deed the promised property to him, but told him he could remain on the property for as long as he paid the property taxes. The court took judicial notice that Charles Ellis began a liaison with Wanda Borders, and that she alleged that she was not living with Mr. Ellis, but staying in the camper trailer outside of his residence. The trial court found that in 1998, Charles Ellis told Chris Farley that he would have to move. Mr. Ellis subsequently transferred the property to Wanda Borders, following the entry of an order forbidding Wanda Borders to bring her minor daughter on to the property of Charles Ellis. The trial court found that Chris Farley had testified at a custody hearing that Wanda Borders had been living with Charles Ellis. That court found a lack of credibility in the testimony of Charles Ellis and Wanda Borders. Some time thereafter, Charles Ellis married Wanda Borders, and Chris Farley continued to make improvement on the property. In addition, the trial court found that although Charles Ellis denied that he made an offer to induce Chris Farley to move from Arkansas to Tennessee, he had no creditable explanation as to why Chris Farley moved to this property, and expended time and money to improve the land. The court found that Charles Ellis was not a credible witness.

The trial court found that plaintiff relied upon the promise of Mr. Ellis in moving his family from Arkansas to Tennessee, and in spending a great deal of money on the subject property, and that a valid contract existed between plaintiff and Mr. Ellis, based upon the theory of promissory estoppel. The trial court stated in pertinent part:

> The agreement between Charles Ellis and Chris Farley violates the statute of frauds; nevertheless, specific performance is appropriate under the equitable estoppel doctrine. At this juncture, justice and good conscience dictate that the agreement, which Charles Ellis entered into with Chris Farley should be enforced. The conveyance to Wanda Borders Ellis is set aside as an attempt by Charles Ellis and Wanda Borders to fraudulently evade performing his contract with his former stepson. Charles Ellis is ordered to deed the property to Chris Farley as he agreed to do when he induced him to move to Tennessee.

Defendants have appealed and present five issues for review.

Since this case was tried by the trial court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless

the evidence preponderates against the findings, we must affirm, absent error of law. Tenn. R. App. P. 13(d).

The first issue for review as stated in defendants' brief is:

> I.  The trial court erred in taking judicial notice of matters not presented at trial.

Defendants complain about the trial court's following statements in the findings of fact:

> The court takes judicial notice that at sometime between then and this hearing Charles Ellis began a liaison with Wanda Borders. At one point she alleged that she was not living with Charles Ellis but was staying in the camper trailer outside of his residence.

> Charles Ellis told Chris Farley that he would have to remove himself from the property in 1998. After a hearing in this court where Wanda Borders was ordered not to take her minor daughter back to the home of Charles Ellis where the court found she had been living, Charles Ellis testified that he sold this property to Wanda Borders for ten dollars. In the custody hearing of Wanda Borders, Chris Farley had testified that she had been living with Charles Ellis. The court found a lack of credibility in the testimony of Charles Ellis and Wanda Borders.

"The court cannot take judicial knowledge of a former suit in the same court. It must be established by evidence." (Citations omitted.) **Hudson v. Shoulders**, 22 Tenn.App. 301, 122 S.W.2d 817, 819 (1938).

In **Sutherland v. Sutherland**, 831 S.W.2d 283 (Tenn. Ct. App. 1991), this Court said:

> Courts may not take "judicial notice" of testimony in prior unrelated cases. Courts must decided cases on competent evidence introduced in the trial of the case. However, it may take judicial notice of certain facts which are common knowledge to all intelligent men. 29 Am.Jur.2d *Evidence* § 14 (1967). "[F]acts which are not judicially cognizable must be proved, even though known to the judge or to the court as an individual." **Id.** at § 15.

**Id.** at 285.

While it appears that the trial court erroneously took judicial notice of certain facts in a prior case it appears from the record as a whole that the facts which the trial court noticed did not have a bearing on the trial court's decision in this case. Therefore, this issue is without merit.

The second issue presented for review, as stated in appellants' brief, is:

> II. The evidence preponderates against the trial court's finding that defendant Charles Ellis had no credible explanation as to why plaintiff moved to the property at issue and spent time and money making it livable.

The trial court merely stated in its findings of fact that "he [Ellis] had no credible explanation why Chris Farley moved to this property and spent so much time and money on making it livable. The court did not find Charles Ellis a credible witness."

Defendants point out in their brief that Ellis testified that plaintiff's mother wanted him to move and have the grandchild there and also that the plaintiff wanted to move to be with his mother.

The transcript shows no factual basis for these statements, such as conversations with Farley and similar testimony. Perhaps, the trial judge felt that this was Ellis's impression. In any event, the trial court considered the record as a whole and as the trier of fact must give the testimony the weight, faith, and credit which it deserves. The trial court had the benefit of other explanations made by Mr. Ellis concerning his dealings with plaintiff and was charged with the responsibility of weighing that evidence, along with all the other evidence, to determine Mr. Ellis's credibility. We find no merit in this issue.

The three remaining issues presented for review, as stated in appellants' brief, are:

> III. The trial court erred in setting aside the conveyance from defendant Charles Ellis to defendant Wanda Borders Ellis.
>
> IV. The trial court erred in concluding that plaintiff had an enforceable parol contract for the sale of land in violation of the statue of frauds and ordering defendant Charles Ellis to deed the property to plaintiff.
>
> V. The trial court erred in refusing to grant the relief sought in defendants' counter-complaint.

We believe these three issues can be combined into a single issue:

> Whether the trial court erred in ordering the specific performance of the alleged oral contract, and, if so, whether plaintiff is entitled to any relief.

Charles and Wanda Ellis contend that, assuming that there existed an oral contract, as alleged by plaintiff, such contract would be in violation of the statue of frauds, and therefore

unenforceable. Defendants contend that under Tennessee law, such a contract is voidable at the election of either party. Once an oral contract is disaffirmed, neither specific performance, nor damages are available. They further argue that the alleged oral contract is not enforceable, as it did not contain the essential terms or mutuality of obligation. Defendants assert that Mr. Farley realized a profit of $15,000.00 by selling his property and moving from Arkansas to Tennessee to be closer to his mother at her request. Furthermore, after Charles and Dorothy Ellis divorced, there was no longer a reason for Chris Farley to live on the property.

The Tennessee statute of frauds prohibits the enforcement of contacts for the sale of land unless the promise or agreement is in writing, and signed by the party to be charged. *See* T. C.A. § 29-2-101(5). Tennessee appellant courts continuously have denied enforcement of an oral contract for the sale of land on the basis of part performance, making it the rule in this state that part performance of an oral contract for the sale of land will not take the agreement out of the statute of frauds. *Baliles v. Cities Service Co.,* 578 S.W.2d 621, 624 (Tenn. 1979) (citing *Knight v. Knight,* 222 Tenn. 367, 436 S.W.2d 289 (1969); *and Goodloe v. Goodloe*, 116 Tenn. 252, 92 S.W. 767 (1905)). The statue of frauds is designed "to reduce contracts to a certainty, in order to avoid perjury on the one hand and fraud on the other." *Price v. Tennessee Products & Chemical Corporation,* 53 Tenn. App. 624, 385 S.W.2d 301 (1964). Therefore, to comply with the statute of frauds, such agreement must show, with reasonable certainty, the material terms intended by the parties to the sale. *See Johnson v. Haynes*, 532 S.W.2d 561 (Tenn. Ct. App. 1975), ("The memorandum must contain the essential terms of the contract expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected without resort to parol evidence.") *Id*. at 565. To comply with the statute of frauds, the memorandum agreement to sell real estate must show with reasonable certainty the estate intended to be sold. *See Baliles* at 623.

In exceptional cases, the application of the doctrine of equitable estoppel has been used to mitigate the harshness of this rule, "where to enforce the statute of frauds would make it an instrument of hardship and oppression, verging on actual fraud." *Baliles,* 578 S.W. 2d 624 (citing *Covington v. McMurray,* 4 Tenn. C.C.A. 378 (1913); *and Gheen v.Osborn,* 58 Tenn. 61 (1872). *See also Decherd v. Blanton,* 35 Tenn. 373 (1855); *Williams v. Conrad,* 30 Tenn. 412 (1850); *Bloomstein v. Clees Brothers,* 3 Cooper's Tenn. Ch. 433 (1877); *and Interstate Co. v. Bry-Block Mercantile Co.,* 30 F2d 172 (D.C.W.D. Tenn.) (1928)).

The record in the instant case is devoid of proof of the material terms of any agreement to convey the real estate, including, but not limited thereto, the terms of the performance, price, if any, and the specific property covered by the alleged agreement. Mr. Farley's own testimony tended to negate a certain oral agreement for conveyance of the title to the property. Under the state of this record, the doctrine of equitable estoppel cannot be used to order a conveyance of the property. To do so would be in effect making a contract for the parties. Courts do not make contracts; they only interpret and enforce them. *See Turner v. Zager*, 363 S.W.2d 512, 519 (Tenn. Ct. App. 1962). However, Mr. Farley is not without relief. The proof demonstrates that Mr. Farley was granted a license to enter and occupy some of Ellis's property for as long as he wished if he paid the property

taxes. We distinguish Mr. Farley's right from a lease, as he was granted permission by Mr. Ellis under their agreement which was not a leasehold.

"A 'license', with respect to real estate, is an authority to do a particular act or series of acts on another's land without possessing any estate therein." ***Barksdale v. Marcum***, 7 Tenn. App. 697, 708, cert, den., (1928).

In ***Heiskell v. Cobb***, 58 Tenn. 638 (1872) the Court held an oral agreement enforceable that allowed the plaintiff to erect a milldam which flooded a section of the adjacent land owned by the defendant, where the defendant not only encouraged the plaintiff to build the dam, but also assisted in its construction, and acquiesced in the use of the dam for several years. The ***Heiskell*** Court stated:

> If one enters upon the land of another by virtue of a parol license, given for a consideration, and erect fixtures, such license becomes irrevocable.

***Id.*** at 639.

In ***Daugherty v. Toomey,*** 222 S.W.2d 195, 196 (Tenn. Ct. App. 1949) the parties owned adjoining property and orally agreed to build a wall near the property line to serve as a shared garage wall. The wall, and part of the defendants' garage, were on the plaintiffs' property, a fact of which the plaintiffs were aware. ***Id.*** Several years after the wall was built, the plaintiffs sought to require the defendants to remove that part of their garage located on the plaintiffs' property. ***Id.*** The trial court decision, denying plaintiffs' request, and applying the doctrine of equitable estoppel was affirmed on appeal. The ***Daugherty*** Court quoted the following from 53 C.J.S., Licenses § 90:

> Where the licensee has acted under the license in good faith, and has incurred expense in the execution of it, by making valuable improvements or otherwise, it is regarded in equity as an executed contract and substantially an easement, the revocation of which would be a fraud on the licensee, and therefore the licensor is estopped to revoke it, particularly where the licensor joins in the enterprise and accepts the benefits of the licensee's labor and expense; and the rights of the licensee will continue for as long a time as the nature of the license calls for. ***It has also been held that the license cannot be revoked without reimbursing the licensee for his expenditures or otherwise placing him in statu quo.***

***Dougherty,*** 222 S.W.2d at 196 (emphasis added). The Court also stated that the plaintiffs had acquired an estimate of the cost to move and rebuild defendants garage, yet they had made no offer to pay the expense, or to reimburse the defendants. Therefore, the Court reasoned, it would be a manifest inequity to grant the plaintiffs the sought relief. ***Id.*** at 197.

In *Lee Highway & Associates, L.P., v. Pryor Bacon Company, supra,* the Eastern Section of this Court held that a license for a right of access could be revoked "without working a fraud on the plaintiff provided the defendant fully reimburses the plaintiff for the monies it expended in building the cut-through." *Id.* at *5.

In the instant case, the record indicates that Charles Ellis gave Chris Farley permission to enter and occupy the subject property for as long as he wished, as long as he paid the taxes. We agree with the trial court that the consideration provided by Mr. Farley pursuant to his agreement was that he "move his home in Arkansas to Crockett County, Tennessee to help Charles Ellis care for Dorothy Ellis." However, we believe the evidence preponderates against the trial court's finding that the agreement was an oral contract for the sale of land. Instead, we believe that Mr. Ellis granted Mr. Farley a license, allowing Mr. Farley to occupy the property in exchange for the consideration he provided, as long as he paid the taxes. The record shows that upon Mr. Ellis's representations, Mr. Farley moved his family to Crockett County, taking up residence on the property adjacent to the home of Charles and Dorothy Ellis. Mr. Farley paid the property taxes from 1994 though 1997, while Charles Ellis owned the property. He attempted to meet the condition of his occupancy by mailing a check to Wanda Ellis for the 1998 property taxes, however, was prevented from fulfilling his obligation in 1998, as she returned the check.

Based on the trial court's findings which are supported by the record and under the above authorities, Mr. Ellis is estopped from removing Mr. Farley from the property without proper reimbursement for the damages lawfully due. When parties would be estopped, their heirs and privies in estate are also estopped. *See LaRue v. Greene County Bank*, 179 Tenn. 394, 166 S.W.2d 1044, 1052 (1942) and *Heiskell v. Cobb*, 58 Tenn. 638 (1872). Therefore, although it was Mr. Ellis that granted a license to Mr. Farley, Wanda Ellis, as the present owner of the property, is estopped to revoke Mr. Farley's license without tendering reimbursement to Mr. Farley for his expenditures for permanent improvements on the land.

In his complaint, Mr. Farley sought the alternative relief of damages to reimburse him for his labor and the material purchased in making permanent improvements to the property as well as his moving expenses. Although Mr. Farley claims that he spent somewhere between $15,000 and $16,000 in improving the land, the record does not establish the value of the improvements on the land. It appears that Mr. Farley and his wife did much of the work themselves and were able to trade some of the materials. Mr. Farley should not receive reimbursement for the property taxes paid nor for his relocation expenses, as these appear to be part of the licensing agreement. Also, no additional rent is due Mr. and Mrs. Ellis, as he provided the consideration agreed to and when requested to vacate the premises, he was not tendered reimbursement for the improvements made. The case should be remanded to the trial court for a determination of damages based upon the value of the permanent improvements to the land.

The decree of the trial court setting aside the deed of the property to defendant Wanda Ellis is reversed, and that part of the decree ordering Charles Ellis to deed the property to Chris Farley is reversed. The decree is modified to order that the plaintiff and counter-defendant, Chris Farley,

remove his mobile home and vacate the property upon reimbursement by Wanda Ellis for the permanent improvements made to the property by Mr. Farley. The case is remanded to the trial court for further proceedings to determine the value of the permanent improvements made to the property by Mr. Farley. Costs of the appeal are assessed one-half to Chris Farley and his surety and one-half to counter-plaintiffs, Charles Ellis and Wanda Ellis, and their surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.