IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 2, 2011 Session

NANCY GATES v. KATIE WILLIAMS ET AL.

Appeal from the Chancery Court for Cocke County
No. 08-131      Telford E. Forgety, Jr., Chancellor

No. E2010-01192-COA-R3-CV - Filed February 28, 2011

As this action was pleaded and tried, it was (1) a claim by Nancy Gates ("the plaintiff") seeking to be declared the owner of a life estate in a tract of property; and, as a consequence of her estate, seeking the removal of Katie Williams ("the defendant"), the widow of the plaintiff's son, Tony, from the property; and (2) a counterclaim by the defendant alleging that she had become the owner of an interest in the property by adverse possession due to her having lived on the property since the late 1960s or early 1970s. The trial court held that, as to these claims, neither party was entitled to relief against the other. The court found, however, that the plaintiff did, in fact, have a life estate in the subject property, and that the defendant had not proven adverse possession because her entry onto the property was with the plaintiff's permission. The court then held, *sua sponte*, that the defendant had a license in the property coupled with an interest therein that had been acquired by building numerous structures on the property with the plaintiff's knowledge and that it would not be equitable to require the defendant to move. The plaintiff appeals. We affirm the trial court's judgment in part and reverse in part and remand for a hearing on the issue of what it would take to do equity given the facts of this case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part and Reversed in Part; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Jeffery S. Greene, Newport, Tennessee, for the appellant, Nancy Gates.

Thomas V. Testerman, Newport, Tennessee, for the appellee, Katie Williams.

**OPINION**

I.

The plaintiff was married to Beecher Gregg. Beecher and the plaintiff had children, including two sons named Tony Gregg and David Gregg. Beecher Gregg also had children by a previous marriage. He died in 1966. Plaintiff's interests in Beecher Gregg's estate were determined in 1966 by the Cocke County Board of Commissioners to include a life estate in 3.31 acres in Cosby adjacent to Cosby Creek and a paved state highway. We will refer to the 3.31 acre tract as "the subject property."

In the late 1960s or early 1970s, although the timing of which happened first is in dispute, two things happened. A young Tony Gregg and his wife Katie, the defendant, moved a small mobile home onto the subject property. The plaintiff moved from Newport to an old house that was already on the subject property. Eventually, her other son, David, and his wife also built a home on the subject property. The three homes were, and remain to this day, situated very close to one another.

Through the 1970s several things happened. Tony Gregg and his brother David Gregg reached an agreement to buy out the interest of their siblings in the subject property and to make mutual deeds dividing up the subject property, all subject to their mother's life estate. That was accomplished and two deeds were made, both of which recite that the grants are subject to the plaintiff's life estate. In the same time frame, Tony began doing mechanic work on the subject property. He found a small building and hauled it onto the subject property to use for shelter. Eventually he added onto the building with metal lean-to type construction. He built two additional buildings of about 500 square feet and 1500 square feet respectively although there is no testimony in the record of the type of construction, *i.e.*, masonry, brick, rough lumber, or how substantial were the buildings. There is testimony that one of the buildings had a concrete floor. These buildings were used in Tony Gregg's business which eventually included mechanic work, a salvage yard with wrecked cars stored on the subject property, selling parts, and towing. Also, over time, Tony Gregg and the defendant were able to trade their small mobile home, first, for a slightly bigger one, and, eventually, for a 24 foot by 56 foot "double-wide" mobile home that the defendant still lives in. Approximately 25 years ago, Tony Gregg built a fence around a part of the subject property. The fenced property is within the tract described in the deed from David Gregg to Tony Gregg. Approximately 15 years ago, Tony Gregg purchased the defendant a swimming pool and had it installed. Trial exhibits include photographs of select views of the outside of the buildings, the above-ground swimming pool, and parts of cars strewn across a portion of the property.

The defendant was never well-liked by the plaintiff and from the record it appears that the feeling is and has been mutual. The plaintiff counseled her son, Tony, against marrying the defendant, but, as life goes, he followed his own leanings rather than that of his mother's

-2-

advice. Tony Gregg died in November 2007 and the defendant remarried, apparently very soon after his death. The plaintiff believes, at least subjectively, although there is nothing in the record to prove or disprove her subjective belief, that the defendant had something to do with Tony Gregg's demise. The defendant posted signs and stopped allowing the plaintiff to come onto the fenced portion of the subject property. At one point there was a physical altercation between the defendant's new husband and the 80-year old plaintiff that led to an order of protection being issued against the plaintiff.

The plaintiff then filed this action, that, as amended, sought a declaration that the plaintiff is the owner of a life estate in the subject property and an order requiring the defendant to move off the subject property. The defendant, in her pleadings as ultimately amended, claimed that she owned a portion of the subject property through adverse possession. The proof at trial was at least ninety percent directed at whether or not the defendant and her husband moved on the subject property and did what they did against the plaintiff's will or with her permission. The plaintiff testified that everything was done with her permission to help her son, and that she at times loaned him money to build things on the property and that he would pay her back as he was able to do so. The plaintiff's son, David, testified that, in the buyout of the siblings and the mutual deeds with his brother Tony, he understood, and thought Tony understood, that their mother retained a life estate in the subject property. The plaintiff denied quarreling with Tony over the property. David denied ever hearing his mother and his brother quarreling over ownership or possession of the property and testified that had he been around when the quarreling occurred, he would have been aware of it. The defendant and her witnesses painted a much different picture. According to them, the plaintiff would often confront her son, Tony, telling him that he should clean up the "mess" of the wrecked cars, or objecting to the fence he had installed, and any number of other such confrontations. They testified that Tony would often tell his mother, the plaintiff, that he owned the property, that he would do with it as he pleased, and that she should leave. The defendant testified that her late husband told his mother that the fence, and locked gates, were there to keep her out.

At the end of the trial, the court rendered its decision. We will repeat the parts that are relevant to our review, with some elaboration as necessary. First, the court found that the plaintiff

> had a life estate in that 3.31 acres, and that was set out and established in 1967, forty-two years ago, and right, wrong, or somewhere in between, nobody can do anything about that now, not me, not anybody else, that's what was done by the Court forty-two years ago, that's a done deal.

It also found that Tony Gregg clearly knew of his mother's life estate:

> . . . . [I]n 1976, Tony Gregg and David Gregg [bought out their siblings and] made deeds to each other to divide the property in half, to partition the property in kind.
>
> * * *
>
> But significantly, once again, both of those deeds, each deed, the deed from Tony Gregg and the deed to Tony Gregg, recite very clearly that the propert[y's] conveyed subject to the life estate of Nancy Gregg, widow of Beecher Gregg, deceased, in the above described premises, set apart to her in a proceeding in the County Court for Cocke County, Tennessee.
>
> So it is absolutely clear to me that in 1976 Tony and David knew that they did not own this property . . . in fee simple absolute. No question in the Court's mind about that.
>
> It shows up over and over, in the court documents, in the deeds, there's recitations that Nancy Gregg Gates has got this life estate out there.

Next, the court determined that the defendant had not carried the high burden of proving adverse possession by clear and convincing evidence:

> The true owner of the life estate here is Nancy Gregg Gates. She has testified that the use by Tony and Katie of the property was permissive. I know that . . . is disputed. . . . .
>
> And where the evidence is disputed, as it is in this case, I simply cannot find that the defendants have met that very high burden of proof to establish title by adverse possession. . . . .

Finally, the court, *sua sponte*, determined that the defendant held a license to use the fenced part of the subject property coupled with an interest that made the license irrevocable:

> What is the Court then left with? The Court holds that Nancy Gregg Gates has a life estate in the [subject] property . . . .

Does it necessarily then follow that the Court will order Katie Williams to vacate this property, and the answer to that is "no", . . . the Court will not order Katie Williams to vacate this property.

There is, I draw an analogy to a couple of things. There is in the law what's known as a license coupled with an interest.

\* \* \*

Ordinarily, a license permission to use property can be revoked, it can be given today. . . . . I can revoke that permission tomorrow. But a license coupled with an interest becomes an easement and therefore . . . it cannot be revoked.

Let me give you a citation to a case, it's an old case but it's been there with us, it's [Daugherty] vs Toomey, 222 S.W.2d, 195 . . .

. . . I'm just going to read the case squib, Tennessee Digest, commend the rest of it to your reading . . . .

It says, "Where a licensee has acted under a license in good faith and has incurred expense in the execution of it by making valuable improvements or otherwise, it is regarded in equity as an executed contract and substantially an easement. The revocation of which would be a fraud on the licensee.

And hence, the licensor is estopped from revoking it, without reimbursing the licensee for his expenditures or otherwise placing him in the status quo."

. . . [A]nd I draw another analogy . . . and this is by analogy only. But some years ago the case of Cross vs McCurry was decided. And in that case, . . . what do the courts do when a neighbor builds a building across the property line and encroaches on your property?

\* \* \*

In Cross vs McCurry what the Court told us was, look, here's how we will resolve that. If you encroach across the boundary line on your neighbor you're going to have to pay, we're going to give you an easement, what is substantially an easement, for the area that you have encroached upon but you're going to have to pay . . . the owner for the value of the easement.

\* \* \*

The bottom line of it is, the Court cannot hold that Ms. Williams has met the very high burden of proof to entitle her to have title to the property but neither will the Court order her to vacate the property. Because it's just in this Court's opinion [f]or the reason said, it's just not the equitable thing to do. Ms. Williams and her husband have been there . . . thirty-nine years.

They've put valuable improvements, a lot of money in the property, on the property, with the knowledge, . . . with the permission and the consent of [the plaintiff]. [The plaintiff] lives next door. . . . She allowed it to go on for thirty-nine years.

She allowed Tony and Katie to move their mobile homes on there, she allowed them to build permanent garages. She allowed them to do all these things for thirty or forty years. They spent money out of their pocket, substantial money out of their pocket, the Court is certain.

And by analogy of the cases of [Daugherty] vs Toomey and by distant analogy perhaps to the case of Cross vs McCurry, the Court just deems it to be not equitable to turn around now and to require [the defendant] to pick up stakes and move off the property.

There's no evidence here about what it would cost to do that, but the Court is, by looking at the pictures of the buildings, the Court is certain that the costs would be substantial . . . and would involve, in the Court's opinion, waste . . . to require the buildings to be torn down or moved.

\* \* \*

-6-

The Court will hold that the area of the property to which [the defendant] will have the possession of and substantially an easement over, will be that area [to the south and west of the fence corresponding roughly with the property deeded by David Gregg to Tony Gregg].

The court further stated that it would not require the defendant to pay rent, ordered the defendant to pay the land taxes, and divided costs equally between the plaintiff and the defendant. The court entered judgment in accordance with its findings announced from the bench. The plaintiff timely filed a notice of appeal.

## II.

The issues raised by the plaintiff, with deference to the plaintiff's phrasing but some editing by the court, are:

Whether the court erred in denying the plaintiff the use and enjoyment of her property.

Whether the court erred in granting an irrevocable license to the defendant without a written agreement granting a license.

Whether the court erring in not affixing a value to the improvements.

## III.

We review the trial court's findings of fact *de novo*, with the presumption that they are correct unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d). With regard to facts that the trial court does not address with findings, we make our own determination where the preponderance of the evidence lies. *Kesterson v. Varner*, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005). We review conclusions of law *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## IV.

The plaintiff blends the first and second issue in her brief. She first makes an assertion that the defendant does not challenge, *i.e.*, that her life estate is an estate in land that she may enjoy during her lifetime as if she owned a fee. There is no point in addressing this

unchallenged assertion under the facts of this case. Because a life estate has many of the same characteristics of a fee estate, it can be lost or diminished in many of the same ways as a fee estate. Adverse possession is one example.

Using her first point as a stepping stone, the plaintiff asserts that it was error under the statute of frauds for the trial court to grant the defendant an easement without a writing signed by her granting such an easement. *See* Tenn. Code Ann. § 29-2-101(a)(4)(Supp. 2010). The plaintiff misses the point of the license coupled with an interest – a point that the trial court correctly explained. The point is that an easement can in fact be granted by lack of objection to a licensee's improvements. More importantly, the argument that such an interest in land violates the statute of frauds was made to the Supreme Court in a petition for certiorari from this court's opinion in ***Daugherty v. Toomey***, 222 S.W.2d 195 (Tenn. Ct. App. 1949), and rejected in its opinion of the same style published at 222 S.W.2d 197, 200 (Tenn. 1949). There is no merit to the argument.

The plaintiff also argues that the trial court erred in granting an irrevocable license without at least making a finding as to the value of the improvements upon which it based the irrevocability. We find some merit in this argument. The trial court correctly noted that there was no evidence of the value of the improvements. There is an obvious reason why there was no such evidence. The plaintiff devoted her efforts at trial to showing that she owned the property and that she was not the victim of adverse possession; she was simply helping her son as most any mother would. The defendant devoted her efforts to showing that the plaintiff objected to everything the defendant and her husband Tony did, and they did it anyway over the plaintiff's objections. The court, nevertheless, found that neither party was right and *sua sponte* made a ruling by analogy to a theory different from those presented by the parties.

The very essence of ***Daugherty*** is that a party who seeks equity must do equity. 222 S.W.2d at 197. In a case such as this, and by application of the very cases the trial court relied upon by analogy, equity would require either, under ***Daugherty***, that the plaintiff reimburse the defendant the value of improvements as a precondition to obtaining relief, or, under ***Cross v. McCurry***, 859 S.W. 2d 349, 354 (Tenn. Ct. App. 1993), that the defendant pay the plaintiff the value of the irrevocable easement that plaintiff was willing to provide for free so long as it was revocable. It is the defendant, not the plaintiff, that wants the license that she has enjoyed for nothing to become irrevocable and for that equity should require some payment.

The record before us is insufficient to allow us to make a determination of the value of the improvements, nor do we believe the evidence before the trial court was sufficient to allow it to make a determination that the improvements are substantial or the result of substantial expenditures that are irreversibly tied to the land. The photographs are the proof. Most of the structures that are visible in the photographs are either temporary, for example

the mobile homes, or show signs of significant weathering, decay, and age. The pool, for another example, is an above ground structure that is movable and the deck around it is obviously sagging and in disrepair. According to the defendant's testimony it is 15 years old or more. The only proof as to the buildings is that one has a concrete floor. One, by reference to the photographs, is a sheet metal skin over some type of frame, probably of the barn pole variety. As to the salvage yard, all that is visible is rusting parts strewn over acreage that the defendant admits she intended to clean up. There are various piles of car and truck body parts that, according to the defendant's testimony, relate to the 1960s, 1970s and 1980s. Proof may well show that their highest and best use is for scrap metal and that by devoting them to that use the defendant could make some money and do the plaintiff a valuable service at the same time.

Under these circumstances, we think that before being estopped to revoke the license, the plaintiff should have an opportunity for a hearing as to the value of the improvements and the easement value of the land the defendant occupies, and an opportunity to elect to either redeem the license or receive damages under the *Cross* approach. In one case where the proof of the value of improvements was inconclusive, we remanded for a hearing on the value of the improvements and an opportunity for the rightful owner to revoke the license by paying the value of the improvements. *See Farley v. Ellis*, No. W2000-00354-COA-R3-CV, 2000 WL 1876431 at 8 (Tenn. Ct. App. W.S., filed Dec. 27, 2000). In another, the value was not in dispute, so when we reversed the trial court's determination that the license was not revocable, we remanded with instructions to allow the true owner an opportunity to redeem the license by paying the value of the improvements. *Lee Highway & Assocs., L.P. v Pryor Bacon Company*, No. 03A01-9507-CV-00237, 1995 WL 619941 at *5 (Tenn. Ct. App. E.S., filed Oct. 19, 1995). We believe that a similar approach is in order in the present case. On remand, the trial court shall conduct an evidentiary hearing to determine (1) the reasonable value of the easement on the property occupied by the defendant from the date of death of the plaintiff's son, before which time the proof indicates the plaintiff would not have revoked the license, and, alternatively, (2) the reasonable value of the improvements that the plaintiff would be responsible for paying before being entitled to a revocation of the license.

V.

So much of the judgment of the trial court as holds (1) that the plaintiff is the owner of a life estate in the subject property; (2) that the defendant has not established an interest in the subject property by adverse possession; and (3) that the defendant has a license coupled with an interest in the property, is affirmed. The court's judgment that the plaintiff is not entitled to any relief is reversed and this case is remanded with instructions for further proceedings. Costs on appeal are taxed to the appellee, Katie Williams.

_____
CHARLES D. SUSANO, JR., JUDGE