## CITY OF CHATTANOOGA v. STATE OF GEORGIA.

Eastern Section.   June 8, 1926.

No petition for Certiorari was filed.

1. **Eminent domain.** **Property having been condemned for public use the court will not intervene and condemn it for another purpose.**
   The court knows no favorites and will not undertake to determine which of the two uses is the most beneficial to the public.

2. **Supersedeas.** **Writ of supersedeas defined.**
   Supersedeas was intended to meet those cases fortunately rare where in advance of hearing on the merits from which the losing party may take

an appeal, the inferior court makes an order actually determining the right and orders its enforcement.

3. **Landlord and tenant. Lessee will not be allowed to surrender possession of the leased property when such surrender will make it impossible for the lessor to regain possession at the termination of the lease.**

Where property used for railroad purposes had been leased for a term of years and the city sought to condemn a part of it for public streets, held that the lessee will not be permitted to let the city take possession against the will of the owner of the fee, for after the city once got possession, the lessee would not be able to regain possession and return it to the owner of the fee at the termination of the lease.

4. **Supersedeas. Supersedeas held properly granted to prevent a city taking possession of property already in public use.**

In an action where a city sought to take certain railroad property for street purposes and where it had instituted condemnation proceedings and condemned the property with the consent of the lessee and where the owner of the fee sought to defeat the condemnation of the property on the ground that it was already devoted to public use, and where the lower court, after granting a temporary injunction to restrain the city from proceeding to take possession pending an appeal set aside its order, and permitted the city to take possession, held the owner of the fee was entitled to a supersedeas in order that it might not lose possession of the property until the final determination of the suit, since possession in the present suit was an exceedingly valuable right.

Petition for Writ of Certiorari to Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Writs of Certiorari and supersedeas granted.

W. L. Frierson, of Chattanooga, and Geo. M. Napier, Attorney-General of Georgia, of Atlanta, for State of Georgia.

B. E. Tatum, J. B. Sizer, J. W. Anderson and W. B. Miller, all of Chattanooga, for City of Chattanooga.

PORTRUM, J. This is an application for writs of certiorari and supersedeas, by the State of Georgia, to supersede an interlocutory order of the circuit court of Hamilton county. Application was first made to a member of this court, but the city of Chattanooga intervened and requested a hearing, and the petition was then presented at the bar of the court, the city in the meantime having made its defense by answer to the petition.

The matter in controversy grows out of the occupancy, by the State of Georgia and the N. C. & St. L. Railway of a boundary of land located in the heart of Chattanooga and used for railroad purposes, a part of which is desired by the city for street purposes. A glance at the railroad history of the South shows that some seventy-five or more years ago the State of Georgia constructed a railroad from the head of navigation on the Chattahoochee River in the State of Georgia northerly to the Tennessee River at Chattanooga; and the railroad and water courses opened up an inland transportation route for commerce over a greater portion of the

Southland. The northern terminus of the railroad was in Chattanooga, and at that early date it was necessary for the State of Georgia to procure terminal facilities and it purchased the railroad yards which are the subject of this controversy. For many years the State of Georgia has leased its railroad properties to the Nashville, Chattanooga & St. Louis Railway which is operating it under a lease contract executed under the authority of the laws of Georgia.

Since the construction of the railroad terminal the city of Chattanooga has grown from a city of minor importance to one of magnitude, and the yards located as they are in the heart of the city, have obstructed the principal thoroughfares, as well as prevented the opening and extending of streets necessary to the proper growth of the city. For many years the city has contested with the State of Georgia its right to open and extend its streets, by appealing to the Legislature of Tennessee for legislative enactment empowering it to carry out this purpose; but the State of Georgia, ably assisted by the N. C. & St. L. Railway—as is admitted by counsel—has always been successful in thwarting this purpose.

The question being continually agitated, the State of Georgia sought to set it at rest by an original suit in the United States Supreme Court against the city, restraining it from hereafter attempting to condemn the said property on a theory that it exercised a sovereignty over the same, but this proceeding was dismissed for the reason that the State of Georgia did not hold property in the State of Tennessee in its sovereign capacity when the said property was used for railroad purposes. The lessee, the N. C. & St. L. Railway, has undertaken to adjust the matter by compromise and has submitted to the municipal authorities a contract under which it agrees to permit the opening of said streets and to lease the property necessary for the opening of said streets and which the streets occupy for the period of its lease, or in the alternative it consents not to contest the right of the city to condemn the property necessary for the opening of said streets, provided the city instituted a joint condemnation suit against it and the lessor, the State of Georgia. But the city was required to elect on or before January 1, 1926, which course it would pursue. It has elected to pursue the condemnation procedure. This agreement was executed by the city and the said railroad, but prior to its execution it was submitted to the Governor of Georgia, who, after consulting with the Attorney-General of the State, advised the city that the leasing provision of the contract was legal and the State of Georgia would offer no objection to its execution, provided the city protected the right of Georgia to regain the possession of the property at the ex-

piration of the lease by specific terms to be embodied in the terms of the contract.

The city having elected to condemn the property in lieu of taking a sub-lease from the lessee, passed the necessary ordinances as provided by Shannon's Code, section 1389, et seq., as amended by the Acts of 1925, chapter 31. The ordinances laid out and defined the boundary of the streets, appointed a jury of view and provided that upon the giving in of the reports of the jury of view assessing the damages to the owners and upon paying the damages into the Recorder's office—or in this case the Auditor's office—then upon fifteen days notice to the owners to open the streets, the city authorities would open said streets to the public, the ordinances declaring said territory to be and constituting public streets of the city of Chattanooga, which gave the street authorities full jurisdiction over the same. A jury was appointed, after due notice to the lessor and lessee, the damages were assessed, proportioned under an agreement which provided it should not affect the right of the State of Georgia to contest the proceedings, and after the fifteen days the city authorities entered upon the property and undertook to open the streets by razing buildings, etc. The State of Georgia appealed from the condemnation and also obtained from the resident circuit judge writs of certiorari and supersedeas removing the case into the circuit court for trial, and it had the effect of suspending further work in the opening of streets. Soon thereafter the city authorities made a motion in the cause to vacate the writ of supersedeas and upon consideration of the same the court ordered the supersedeas vacated, when the city authorities again begun the work of opening the streets and dispossessing the State of Georgia and its lessee of the physical property. Application is now made to this court for writs of certiorari and supersedeas under sections 5737 and 6348 of Shannon's Code.

The principal defense to this application is grounded upon the theory that since the N. C. & St. L. Railway is the lessee of the physical properties and entitled to the immediate and continuing possession until the expiration of the lease, which will not occur for about forty-five years, then that the State of Georgia is in no position to complain of the possession of the city pending the litigation, since the State of Georgia is not entitled to the immediate possession and therefore it has no right to an order superseding the order of the lower court vacating the supersedeas issued by it. And it is further claimed that since the N. C. & St. L. Railway, the lessee, did not appeal from the condemnation proceedings the city is entitled to all the interests of the lessee in said designated property and is, therefore, entitled to the immediate possession, as

well as the right to continue in the possession pending the expiration of the lease.

At first glance this contention is plausible, but when viewed in the light of the fact that the State of Georgia holds the property by virtue of its public uses, and is contesting the right of the city to condemn on the ground that it is already devoted to a public use, then the question takes on a different aspect. For if the city obtains possession peacefully and rightfully and then devotes the property to a public use, when the State of Georgia undertakes to regain possession it will be confronted by the question which is now confronting the city, that is, the property is being devoted to a public use.

We are not aware of any rule of law that would give the State of Georgia a superior claim and reinstate it in the possession of the property, once the city has taken and devoted it to street purposes. The courts know no favorites and will not undertake to determine which of the uses is most beneficial to the public in order to determine whose right will prevail, the right of possession is therefore a valuable right and will probably determine the rights of the parties. It is such a right that should not be lightly destroyed. It is not necessary to finally determine the question stated above before the courts will protect the right of possession pending the determination of the matters in controversy. If it appear that the parties in possession may be irreparably injured, the right of possession will be protected awaiting the final result.

If the loss of possession means the loss of the right, then the taking of possession by the city under the authority of its ordinances pending a hearing of the matters in controversy, is a denial of due process of law, which contemplates a hearing before judgment and judgment before execution.

"It was intended" (the supersedeas) "to meet those cases, fortunately rare, where, in advance of a hearing on the merits, from which the losing party may take an appeal, the inferior court makes an order actually determining rights, and orders its enforcement." Howell v. Thompson, 130 Tenn., 322.

Condemnation proceedings are dual in character, that is, the right of the condemnor to condemn is first determined and upon the right being established possession is awarded upon securing the damages and this determination is final in character; second, the amount of the damage is determined and pending the determination of all the matters in controversy, a supersedeas will be granted, in the proper case, in order to hold the matter in statu quo pending an appeal and a final determination. Tennessee Railway Co. v. Campbell, 109 Tenn., 655.

It is well recognized by the authorities that the order must be one which is of a nature to be actively enforced against a party before it will be superseded. Prohibitory injunctions, of course, do not fall within this class since they suspend the execution of nothing but serve only to hold the matter in status quo. The same is also true of attachments.

"The writ of supersedeas is technically a writ to suspend the execution of a judgment. There must be something in the course of execution, to suspend which the writ is awarded—Something in fieri, but not yet finished. Its common function is to stop the execution of a judgment at law, or a decree in equity whether interlocutory or final, and whether for money or other property, or whether the said execution be for the performance of any other act under the mandate of the court. . . . Its issuance imports that something is about to be done which will be illegal and injurious to the party complaining, and the doing of that act is to be suspended until its justice and legality can be inquired of by the court.

"But, delicate and dangerous as is this jurisdiction in a court of equity, and injurious as its exercise may sometimes be, can this court, under the authority conferred by the statute, award the writ of supersedeas, to thwart and defeat an interlocutory order granting a temporary injunction? Why not? Because the injunction is not an active, but a passive thing. It is of itself a supersedeas. There is nothing in fieri to check or stop." Howell v. Thompson, supra.

If the writ of supersedeas is not issued in this case will the status quo ante be maintained? And this is the purpose of a supersedeas. We think not, for the reason that the ordinances of the city of Chattanooga conform to the law of condemnation proceedings as provided for cities, and the condemnation by the ordinances is final in its terms and is subject to immediate execution, which was stayed only by the issuance of the supersedeas and certiorari by the circuit judge.

It is insisted that the right to the possession by the city is given it by the contract executed by it and the Railway Company, to which the authorities of the State of Georgia assented, and that under the terms of the contract the city is entitled to the possession. This is a question which has not been determined by the lower court, and will come up upon a hearing on the merits. This court upon an application for supersedeas cannot pass upon the merits of the case which is pending below, in advance of a hearing there; it can only look to see if there is a bona fide contention made by the State of Georgia that the contract is not susceptible of such construction. We find that there is such a bona fide contention. It is further in-

sisted that since the writ of supersedeas is a discretionary writ, the court will not grant it where practical justice has been attained. Ashcroft v. Goodman, 139 Tenn., 625.

We think the court is not in a position to determine whether or not practical justice has been attained without passing upon the merits of the case, which can only be done when a certiorari has issued bringing up a final order or decree, and that this rule is not applicable where only supersedeas is secured to stay the execution of an interlocutory active order pending a final judgment in the lower court.

We are of the opinion that a proper case has been made out for the issuance of the writ of supersedeas; that the appeal and the writ of certiorari issued by the trial judge brought up the whole case for a retrial; that the lessee was without authority in the absence of the consent of its lessor to denude itself of the possession if it be unable to restore the possession at the expiration of its lease, and therefore, the State of Georgia has the right to contest the act of the railway company in attempting to give possession. And further, the proceeding is not severable because the condemnation is against the lessee and the lessor jointly, and is an attempt to condemn the fee.

This court may grant the writ of supersedeas in order to place and hold the parties in statu quo pending the litigation, but is without authority to pass upon the merits of the case; and the courts are left free to pass upon the merits as they arise hereafter.

A certiorari will therefore issue for the sole purpose of bringing up the order which was issued by the circuit judge vacating the supersedeas issued by him—the parties at the bar having agreed that such order was made—and a supersedeas will be issued superseding and vacating such order and likewise superseding the aforesaid city ordinances, and reinstating the supersedeas issued by the trial judge, pending final determination of the matters in controversy. The city will pay the cost incident to this supersedeas.

Snodgrass and Thompson, JJ., concur.