**TOWN OF DANDRIDGE, Plaintiff–Appellant,**

v.

**L.D. PATTERSON and wife, Emma Jean Patterson, and Merchants and Planters Bank, Defendants,**

and

**Jefferson County, Tennessee, Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Nov. 13, 1991.

Application for Permission to Appeal Denied by Supreme Court March 16, 1992.

Gary A. Davis, Knoxville and P. Richard Talley, Dandridge, for appellant.

T.E. Forgety, Jr., Dandridge, for appellee.

## OPINION

GODDARD, Judge.

Town of Dandridge ("Dandridge"), Plaintiff, appeals the Circuit Court of Jefferson County's grant of a motion for summary judgment[1] in favor of Jefferson County ("County") and L.D. Patterson, et al., Defendants, denying the Plaintiff's condemnation petition. The Plaintiff seeks to exercise its power of eminent domain to condemn an easement over the Patterson's property which the owner had granted an option to the County to purchase for the purpose of constructing and operating a solid waste landfill.

Dandridge insists the Trial Court committed reversible error in holding that the County's unexercised option created such an interest or property right as to allow the County to invoke the intergovernmental immunity doctrine precluding the condemnation action. By its issues on appeal Dandridge contends that the unexercised option to purchase real property does not create any legal or equitable property interest and that its power of eminent domain is superior to any right which may have been conferred upon the County.

## FACTS

In November 1988, the County executed an irrevocable option contract to purchase for the sum of $350,000 certain property owned by the Pattersons, which is the subject of this litigation.[2] The option contract gave the County the right to enter upon the property to conduct tests to determine the suitability of the site for a solid waste landfill. All parties agree that the option contract is presently in full force and effect with an expiration date of December 31, 1991.

The option contract was duly recorded in the Register's Office for Jefferson County on August 7, 1990. However, Dandridge had been aware of the option contract since

---

1. Jefferson County ("County") was not an original party to Dandridge's condemnation proceeding against L.D. Patterson, et al., filed in the Circuit Court of Jefferson County. The Court ordered the County to be joined in the suit to litigate common issues of property interest related to the suit whereupon the County filed a motion for dismissal, or for judgment on the pleadings, or for summary judgment. The motion was properly treated as one for summary judgment pursuant to Tennessee Rule of Civil Procedure 12.03 and disposed of as provided in Rule 56.02.

2. Although the property is located within Jefferson County, it is outside the municipal boundaries of the Town of Dandridge.

its inception. Further, Dandridge has been aware of the County's continuing investigatory tests.

In May 1989, the County decided to purchase the property provided the engineering work indicated it was feasible to locate a landfill upon the property. The County subsequently expended approximately $126,000 in landfill development activities on the property. After completing the engineering work, the County, on November 21, 1990, applied for a landfill permit from the Tennessee Department of Health and Environment. In March 1991, the State Department issued a tentative or draft permit approving the landfill site "pending consideration of any adverse technical information received during the public comment period" ending on April 29, 1991.

During the interim Dandridge conducted their own geologic survey at an estimated cost of $125,000. The results of the geologic tests found that a landfill located on the Patterson's property would threaten or possibly cause irreparable harm to the ground water supply for the Town of Dandridge's waterworks system. On February 6, 1991, Dandridge filed its condemnation petition seeking to condemn an easement over the Patterson property that would prevent the County from "constructing or operating ... a solid waste landfill upon the[ ] property". Dandridge concedes the sole purpose for condemning the easement is to prevent the County from locating a landfill site upon the property.

## LAW

As stated by the Trial Court, the issue presented for the Court to decide is "not where, when, or if a landfill is to be located on the subject property. The only issue for this Court is whether a condemnation action under the facts and circumstances of this case is proper." [3] As such, the Court held that the option contract possessed by the County is a legally protected contractual right creating a property interest which is not subject to condemnation by another governmental entity. For the reasons set forth below, we affirm.

■ The parties stipulated to the general rule of law that one public entity has no power to condemn the property of another public entity devoted to a public use unless such power has been specifically conferred upon the condemning governmental entity by the Legislature. *Atlanta, K. & N. Ry. Co. v. Southern Ry. Co.*, 131 Fed. 657 (6th Cir.1904). The rule is commonly referred to as the doctrine of intergovernmental immunity. The State Legislature has not granted a specific power upon Dandridge to condemn the property of another public entity. Therefore, the dispositive issue is whether the unexercised option contract possessed by the County constitutes such a property interest to permit the County to invoke the doctrine of intergovernmental immunity.

■ Dandridge contends that the general rule followed in the majority of American courts is that an unexercised option to purchase real property does not result in a legal or equitable interest in the property. See generally, *Hirlinger v. Hirlinger*, 267 S.W.2d 46 (Mo.1954); *Phillips Petroleum Co. v. Omaha*, 171 Neb. 457, 106 N.W.2d 727 (1960). Dandridge further contends that Tennessee specifically adopted this rule. In *Sager v. Rogers*, (an unpublished opinion of this Court, filed at Knoxville February 20, 1987), 1987 WL 6718, the question was posed whether an unexercised option to purchase real estate contained in a franchise agreement has priority over a subsequent sales contract concerning the same property. In reaching its holding, the Court recognized the principle that an option creates no interest in land. *Id.* The Court found where the purchaser had no actual or constructive notice of the

---

**3.** The Court properly noted that the interests of Dandridge may be legally protected by other types of proceedings, i.e., the public comment hearing held by the Tennessee Department of Health and Environment.

option provision the rights of the purchaser are superior.

Most of the pertinent Tennessee cases cited by the litigants concern the equitable interests of purchasers who have acquired real property subject to a lease and option to purchase held by a third party. In these cases the Courts have struggled with the question of whether the purchaser had actual or constructive notice of the unexercised option to determine which competing interest should prevail. See *Sager v. Rogers*, supra; *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41 (1950). The question here is not to resolve the dispute between competing equitable interests. Rather, the issue is whether the County has an equitable interest protected from a condemnation suit via the intergovernmental immunity doctrine. Therefore, these cases are not applicable.

Neither Dandridge nor the County has provided, nor has this Court found, any Tennessee precedent specifically addressing the property interest of the holder of an unexercised option to purchase real property involved in a condemnation proceeding. This is a case of first impression in this Court.

Although an option to purchase might not create a present interest in land under some of the cases cited by Dandridge, see, e.g., *Lynch v. Burger*, 26 Tenn.App. 120, 168 S.W.2d 487 (1942), it is such an interest or right which would preclude Dandridge from proceeding with its condemnation suit.

The County has had the option contract since November 1988. Dandridge had been aware of the contract since its inception. After two years of meetings, negotiations, and tests, in November 1990, the County applied for a tentative permit for the landfill which was issued by the Tennessee Department of Health and Environment in March 1991. Only after the County applied for the permit did Dandridge commence civil proceedings attempting to prohibit the landfill. Considering the facts presented

herein, it is difficult to say that the County does not possess an equitable interest in the property, be it a lease, license or otherwise. The equitable interest thus created vests a valuable and compensable property right in the holder. See *In re Governor Mifflin Joint School Auth. Petition*, 401 Pa. 387, 164 A.2d 221 (1960) (holder of unexercised option to purchase land held entitled to compensation in condemnation proceeding for value of lost right to purchase property). The County's option contract created a legally protected property interest or right. Therefore, another governmental entity is precluded from condemning the land.

■ Dandridge further asserts that the option contract held by the County merely grants a nonexclusive right to enter the premises for specific purposes. The right to use, enter and leave property owned by another party does not amount to a real property interest. *United States v. Anderson Co.*, 575 F.Supp. 574 (E.D.Tenn. 1983), aff'd, 761 F.2d 1169 (6th Cir.1985) (Tennessee law applied); *Union Carbide Corp. v. Alexander*, 679 S.W.2d 938 (Tenn. 1984). Rather, the interest is possessory. *Anderson Co.*, supra. In *Anderson Co.* the Court characterized the interest as a license to use the property and held that such a license created no real property interest in the land for purposes of assessing State ad valorem property taxes against the possessor. *Id.* Dandridge parallels the option contract to a license to use the premises which confers no property interest upon the holder.

The County contends, *inter alia*, that a license to enter or use real estate coupled with an interest in the property confers more than a possessory right; rather, it amounts to an easement. In *Daugherty v. Toomey*, 32 Tenn.App. 155, 158, 222 S.W.2d 195, 196 (1949), the Court said:

"Where the licensee has acted in good faith, and has incurred expense in the execution of it, by making valuable improvements or otherwise, it is regarded in equity as an executed contract and substantially an easement...."

Citing 53 C.J.S., Licenses Sec. 90, p. 816. In this instance, the County characterizes the irrevocable option contract coupled with the subsequent investigatory expenditures as a legally protected property interest or right. The County avers that the interest or right created by this license feature would also preclude Dandridge from proceeding with their condemnation suit.

In reliance upon the contract, the County expended approximately $126,000 on the investigatory tests, the engineering work and the contract itself. Admittedly, Dandridge has paid roughly the same amount on geologic surveys. However, the County was properly relying on the license feature of the contract during its expenditures; Dandridge was merely conducting collateral tests with no other contractual or vested interest. As alluded to earlier, the County's option contract constituted a valuable and compensable property right in the land. Therefore, every provision in the executed option contract, including the license feature, is enforceable and reliance thereon legally protected.

This reasoning is in accord with that espoused in *Daugherty v. Toomey,* supra, where the Court noted the inequity of ignoring good faith expenditures in reliance of an executed license. The County obviously relied upon the option contract in continuing to expend large sums of money to test the feasibility of locating a landfill on the property. The County took every preparatory step required to construct the landfill, administrative, architectural and financial. Therefore, the license feature of the option contract also constitutes a legally protected property interest enabling the County to invoke the intergovernmental immunity doctrine.

■ Despite the County's aforementioned property interest, Dandridge contends the condemnation action is permissible. Dandridge notes an exception to the general rule that one government cannot condemn the property of another govern-ment. *Duck River Electric, Etc. v. City of Manchester,* 529 S.W.2d 202 (Tenn.1975). In *Duck River,* the City of Manchester exercised its eminent domain powers to acquire public works property within the city limits. The Tennessee Supreme Court permitted the City of Manchester to acquire so much of the electric system of the public nonprofit electric membership corporation as was within the boundaries of the city. *Id.* The Court found that since the city could not exclude any person within its boundaries from electrical service, as the electric membership corporation could, its public service was of a higher public use than Duck River's. Dandridge claims the prevention of irreparable harm to the town's water supply is a "higher" public use than the County's location of a landfill.

The *Duck River* Court premised its decision on the fact that public service corporations are not government entities, rather than an exception to the doctrine of intergovernmental immunity. After noting electric systems are seldom privately owned, the Court characterized such electric membership cooperatives as "manifestly low-grade, volunteer, public service type corporations, inferior in all respects, to municipalities...." *Duck River,* supra. Through enacting T.C.A. 7–34–104, the Tennessee Legislature knew that it was authorizing the condemnation by municipalities of such low-grade public service type utility operations engaged in supplying electric current to the public. *Id.* As such, the Legislature specifically conferred such power upon the City of Manchester. The opinion contains no reference to an exception to the general rule of intergovernmental immunity. The language regarding a higher use is merely dicta. This Court is not bound to follow Dandridge's tortured reasoning which would elevate the *Duck River* dicta to an exception to the general rule of law. See generally, *City of Chattanooga v. State of Georgia,* 3 Tenn.App. 42 (1926), (the judiciary will not transgress legislative responsibility in weighing the priorities of public uses concerning government property).

Likewise, this Court will not begin to carve out exceptions to the general rule of intergovernmental immunity premised upon the speculative priority of beneficial uses to the public. The public comment hearing appears to be the proper forum for such a debate.

The County has moved for consideration of post-judgment facts pursuant to Tennessee Rule of Appellate Procedure 14. A motion to consider post-judgment facts generally must be "unrelated to the merits". Advisory Commission's Comment under Rule 14 of the Tennessee Rules of Appellate Procedure. Such consideration lies within the discretion of this Court. *Id.* The motion concerns the final approval of the landfill site by the Tennessee Department of Health and Environment. Because the facts sought to be considered go to the merits of the controversy, the motion is denied.

For the foregoing reasons the Trial Court is affirmed and the cause remanded for such further action, if any, as is necessary and collection of costs below. Costs of appeal are adjudged against Dandridge and its sureties.

SANDERS, P.J. (E.S.), and FREDERICK D. McDONALD, Special Judge, concur.