# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 18, 2013 Session

## DAVID ANDREW THORNELOE v. CHEREE ANNE OSBORNE

**Appeal from the Law Court for Sullivan County (Kingsport)**
**No. C39259     E.G. Moody, Judge**

---

**No. E2012-02004-COA-R3-CV-FILED-AUGUST 26, 2013**

---

This case involves a parent's petition to relocate pursuant to Tennessee Code Annotated § 36-6-108 (2010). The mother, Cheree Anne Osborne ("Mother"), notified the father, David Andrew Thorneloe ("Father"), of her intent to relocate to Wisconsin with the parties' two children for the purpose of residing with her new husband. Father opposed the relocation. The parties stipulated that they were not spending substantially equal intervals of time with the children. Following a bench trial, the trial court denied Mother's request to relocate based on Tennessee Code Annotated § 36-6-108(d), finding that the relocation did not have a reasonable purpose and that the relocation would pose a threat of specific and serious harm to the children. The trial court also found that the relocation was not in the children's best interest. Mother appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Robert A. Anderson, Nashville, Tennessee, for the appellant, Cheree Anne Osborne.

Thomas F. Bloom, Nashville, Tennessee, and W. Stephenson Todd, Jr., Kingsport, Tennessee, for the appellee, David Andrew Thorneloe.

## OPINION

### I. Factual and Procedural Background

Mother and Father were married on May 20, 2000, and two children were born of their

union: Kristin, now age ten, and Lindsey, age seven. The parties divorced in the Circuit Court for Montgomery County[1] on November 1, 2007. The parties were residing in Clarksville at that time as Father, who was enlisted in the military, was stationed at Fort Campbell. An agreed permanent parenting plan was entered incident to the divorce, which order provided Mother 265 days annually with the children and Father 100 days. The parenting plan designated Mother as primary residential parent. Mother and the children moved to Blountville to live with the maternal grandparents. Father was thereafter deployed to Afghanistan for one year, after which he left active duty and returned to the United States in January 2009. Father subsequently obtained employment with the U.S. Attorney's Office in Asheville, North Carolina. He also served as a member of the North Carolina Army National Guard. Father purchased a home in Weaverville, North Carolina, seventy-five miles away from Mother's residence in Blountville.

Mother remarried in 2008. That marriage ended in divorce less than one year later. Mother briefly left her parents' home during that marriage but then returned to live with her parents. Father married Amy Thorneloe in June 2011, at which time she moved into his Weaverville home. On December 24, 2011, Mother married Theodore Gast, who maintained his domicile in Wisconsin. At the time of trial, Mother was still residing in her parents' home in Blountville with the children. Visits to and from Mr. Gast occurred approximately once every month or two.

Following the divorce, the parties loosely followed the co-parenting schedule specified in their parenting plan. Some flexibility was exercised due to Father's National Guard duties and the distance between the parties' homes. Father testified that this fluid arrangement ended, however, in July 2011 when Mother notified him of her intent to relocate and he opposed same. Thereafter, as Father stated, Mother insisted on strict compliance with the parenting plan and would not allow him to spend extra parenting time with the children.

Both parties petitioned the trial court to modify the permanent parenting plan and adjust Father's child support obligation accordingly. Further, both sought an award of attorney's fees.

Following a bench trial on July 2, 2012, the trial court entered an order denying Mother's request to relocate to Wisconsin with the children. The trial court determined that Mother's proposed relocation did not have a reasonable purpose, would pose a threat of specific and serious harm to the children, and was not in the children's best interest. The court made extensive findings of fact.

---

[1] This matter was transferred to the Law Court for Sullivan County at Kingsport on January 11, 2012, as Mother and the children were residing in Blountville.

The trial court also determined that the parties' permanent parenting plan should be modified and adopted the new plan proposed by Father. The court further adjusted the amount of Father's child support obligation and awarded Father attorney's fees in the amount of $6,000. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1.  Whether the trial court's denial of Mother's planned out-of-state relocation must be reversed because Father had no standing to invoke application of Tennessee Code Annotated § 36-6-108 and the trial court was without subject matter jurisdiction to rely on Tennessee Code Annotated § 36-6-108.

2.  Whether the trial court's judgment should be reversed because its findings that the proposed relocation (1) was without a reasonable purpose and (2) posed a threat of specific and serious harm to the parties' children were against the preponderance of the evidence or were reversible error as a matter of law.

3.  Whether the trial court abused its discretion by modifying the parties' existing parenting plan without sufficient findings of a material change of circumstance affecting the children's best interest.

4.  Whether the trial court erred when it adjusted the child support obligation of Father.

5.  Whether the trial court abused its discretion in awarding Father his attorney's fees.

## III. Standard of Review

The standard of review is de novo upon the record with a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. *Blair v. Brownson*, 197 S.W.3d 681, 683-84 (Tenn. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact more convincingly. *Mann v. Mann*, 299 S.W.3d 69, 71 (Tenn. Ct. App. 2009). We also give great weight to a trial court's determinations of witness credibility. *Id.* For questions of law, the standard of review is de novo without a presumption of correctness afforded to the lower

court's conclusions of law. *Blair,* 197 S.W.3d at 684.

## IV. Tennessee Code Annotated § 36-6-108

Tennessee Code Annotated § 36-6-108, also known as the parental relocation statute, provides, *inter alia,* that if a parent "desires to relocate outside the state or more than one hundred[2] (100) miles from *the other parent within the state*," the relocating parent must send notice to the other parent and seek court approval of the relocation if the other parent objects. (Emphasis added.) Mother argues that Father had no standing to rely on this statute in opposition to her proposed relocation because he does not reside in Tennessee, construing the statutory phrase "the other parent within the state" to mean that the non-relocating parent must reside within Tennessee before the statute will apply. Mother also argues that the trial court had no subject matter jurisdiction to address and rule upon Father's opposition to Mother's relocation, based on Tennessee Code Annotated § 36-6-108, for the same reason. Mother relies on *Kawatra v. Kawatra*, 182 S.W.3d 800 (Tenn. 2005), in support of her interpretation of this statute. This issue was not addressed by the Court in *Kawatra*, however, as there the non-relocating parent resided in Tennessee. *See id.*

Father argues that Mother's interpretation of Tennessee Code Annotated § 36-6-108 is erroneous. Father contends that the correct interpretation of the parental relocation statute is that its application is triggered either when (1) a parent wishes to move out of the state or (2) a parent wishes to relocate within the state, but the distance is more than 100 miles from the other parent. We agree. *See Mann v. Mann*, 299 S.W.3d 69, 71 (Tenn. Ct. App. 2009) ("When a divorced parent seeks to relocate with the parties' children more than 100 miles from the other parent, Tenn. Code Ann. § 36-6-108 provides that the relocating parent shall give notice of the proposed move to the other parent. Knoxville is more than 100 miles from Nashville; therefore, Mother gave notice to Father of her planned relocation with the children."); *Edgeworth v. Edgeworth*, No. W2006-01813-COA-R3-CV, 2007 WL 2403356 at *6 (Tenn. Ct. App. Aug. 23, 2007) ("Tennessee Code Annotated § 36-6-108 . . . sets out the framework for courts to determine whether to permit the primary residential parent to relocate with the child, or children, outside Tennessee or more than 100 miles away inside Tennessee."). *See also Watson v. Watson,* 196 S.W.3d 695, 696 (Tenn. Ct. App. 2005) (parental relocation statute applies when a parent is moving from Lexington, Tennessee, to Murfreesboro, Tennessee).

Further, where the parties were divorced in Tennessee, this Court has previously allowed a parent who lives out of state to oppose the other parent's proposed relocation,

---

[2] This statute was amended effective July 1, 2013, to change the mileage requirement from one hundred miles to fifty miles.

pursuant to Tennessee Code Annotated § 36-6-108. *See Bulick v. Thompson*, No. W2004-00816-COA-R3-CV, 2005 WL 123502 at *2 (Tenn. Ct. App. Jan. 18, 2005). In *Bulick*, the parties were residing in Tennessee at the time of the divorce, and their marital dissolution agreement provided that the mother would have custody of the parties' child, with the father to enjoy liberal visitation. *Id.* The father later relocated to Mississippi. *Id.* Thereafter, the mother's new husband received a promotion in his employment, which required him to relocate from Memphis to White Pine, Tennessee. *Id.* The trial court and this Court both applied the provisions of Tennessee Code Annotated § 36-6-108 in that factual scenario, even though the father no longer lived in this state. *Id.*

As this Court has previously explained, a trial court "having subject matter jurisdiction over custody of a child also has subject matter jurisdiction over a petition to relocate filed by one of the child's parents." *Price v. Bright*, No. E2003-02738-COA-R3-CV, 2005 WL 166955 at *9 (Tenn. Ct. App. Jan. 26, 2005). The Court noted that this was appropriate because the trial court would often need to "craft a new visitation schedule if the parent was permitted to relocate," or perhaps even modify the child's custody. In this case, both parties conceded that the trial court retained subject matter jurisdiction over the custody of these children. As such, we conclude that the trial court also retained subject matter jurisdiction over Mother's proposed relocation with the children. Mother's arguments asserting the inapplicability of Tennessee Code Annotated §36-6-108, Father's lack of standing, and the trial court's lack of subject matter jurisdiction are without merit.

## V. Proposed Relocation

Mother next asserts that the trial court erred in ruling that there was no reasonable purpose for her relocation and that relocation posed a threat of specific and serious harm to the parties' children. As relevant to this action, Tennessee Code Annotated §36-6-108[3] provides:

> (d)(1) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court

---

[3] As previously noted, the parties herein stipulated that they were not spending substantially equal intervals of time with the children.

finds:

> (A) The relocation does not have a reasonable purpose;

> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or

> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

The trial court found that Father had proven that the proposed relocation did not have a reasonable purpose and that the relocation posed a threat of specific and serious harm to the children. We will address each finding in turn.

## A. No Reasonable Purpose

Mother contends that the evidence established a reasonable purpose for her relocation with the children, including (1) potentially higher income for Mother in teaching positions in Wisconsin, (2) a pledge of financial support from Mr. Gast, (3) "better housing" in an "affluent" area, (4) greater family support system, (5) better educational opportunities for the children, and (6) a loving family environment with her and Mr. Gast. Father asserts that he met his burden of proving that the relocation lacked a reasonable purpose because (1) there is no valid economic purpose for the move, (2) relocation will cause an abandonment of the children's family support network in Tennessee, (3) Mother's new marriage has "shallow roots," and (4) Mother's proffered reasons for relocation are insufficient when weighed against the gravity of Father's inability to participate fully in the children's lives. Upon our considered review of the record in this cause, we agree with Father.

Mother's main purpose for relocating was so that she could live with her husband of six months, Mr. Gast, at his home in Wisconsin. Although the proof showed that he owned a very nice home unencumbered by mortgage debt, the evidence did not establish that this home surpassed the quality of the home where Mother and the children were currently residing. Although Mother testified that the public schools in Wisconsin were better than the school the children were currently attending, she provided no basis for this opinion. Mother then stated, however, that she wanted the children to attend a private school in Wisconsin, at a cost of $13,500 per child per year.

Mother was employed as a teacher with Kingsport City Schools, earning in excess of $42,000 per year. By her estimate, she could earn an additional $5,000 to $8,000 per year as a teacher in Wisconsin. The proof, however, showed that the cost of living was higher in that area as well. Mother had applied for numerous teaching jobs in the vicinity of Mr. Gast's home but had received no requests for interviews and no offers of employment. Mother also asserted she would have a large family support network in Wisconsin via Mr. Gast's family. The proof evinced that Mr. Gast's aging parents live near his home and that he has a brother, an aunt, and cousins who live an hour or more away from him. In Tennessee, the children have lived with their maternal grandparents for the last five years. The proof demonstrated that the children have a very close relationship with these grandparents and that their maternal grandmother has provided care for them on a daily basis. The children also have an uncle and cousin living nearby with whom they enjoy a close relationship. Father likewise has family members who live close to his home. His parents recently purchased unimproved real property with the intent of building a residence minutes from Father's home. Therefore, the proof did not support Mother's claims of better employment opportunities and a larger family support network in Wisconsin.

Likewise, although Mother claimed that she could rely upon Mr. Gast for financial support, the proof demonstrated otherwise. The trial court found that the Marital Property Agreement signed by Mother and Mr. Gast prior to their marriage evinced the couple's intent to remain financially independent and showed that Mr. Gast was not required to support Mother financially. The proof supports this finding. As the trial court aptly observed, "Given that Mother would be trading employment for unemployment and the evidence shows no apparent intent for Mr. Gast to provide for Mother to the extent that her own family has done so, Mother's assertion that she has a reasonable economic purpose is unsupported."

In other cases where there existed no guarantee of employment or financial security upon relocation, this Court has found that a reasonable purpose was not shown. As stated in *Butler v. Butler*, No. M2002-00347-COA-R3-CV, 2003 WL 367241 at *2 (Tenn. Ct. App. Feb. 20, 2003):

> Doubtless, relocation because of a better job opportunity, greater salary, and career advancement opportunities, establishes a "reasonable purpose" within the meaning of the statute. The proof offered in this case, however, does not sustain the allegations of such increased salary and increased opportunities.
>
> The proof establishes that both Mother and Father are good and attentive parents and that Father faithfully exercises his visitation rights with his daughter. The daughter is well settled in the Davidson County area with adequate schooling facilities. However, such considerations are inadequate

under the statute to prevent a custodial parent from relocating if a reasonable purpose is established. The difficulty is that, while Mother discusses in her testimony a job in Ft. Worth and career advancement opportunities, when the record as a whole is considered, she presents to the court no job offer but, rather, a litany of things that she hopes to be able to accomplish after such a move.

*Id.; see also Rogers v. Rogers,* No. M2008-00918-COA-R3-CV, 2009 WL 1034795 at *6 (Tenn. Ct. App. Apr. 16, 2009) (concluding that where the mother had no firm job offer and no proof of better job opportunities, the trial court improperly found a reasonable purpose for relocation.)

The evidence does not preponderate against the trial court's finding that Mother's proposed relocation in the present action had no reasonable purpose. This case is substantially similar to the case of *Mitchell v. Mitchell*, No. M2004-00849-COA-R3-CV, 2005 WL 1521850 (Tenn. Ct. App. June 27, 2005), wherein the mother wished to relocate to California to live with her new husband. *Id.* at *1. The evidence showed that she sought employment in California but had not located same. *Id.* at *3. The mother also provided no proof of her assertion that the schools in California were superior, other than her own testimony. *Id.* at *4. Finally, the mother stated that she wanted to reside with her new husband and be near his family, but this Court found that reason alone to be insufficient. *Id.* at *3.

This Court stated:

Mother, understandably, desires to reside with her new husband; however, residing with her new husband does not necessitate that she and the child relocate to California. Moreover, her desire to reside with her new husband in California does not necessitate that it is reasonable for the child to relocate to California. A relocation based solely on a new marriage has been held to be insufficient. *See Schremp*, 2000 WL 1839127 at *2. As this court explained, while it is reasonable for a husband and wife to want to live together, marriage often requires sacrifices on the part of the husband and wife so they can share a residence. *Id.* Mother did not offer any additional evidence to explain why she had to relocate to California as opposed to her new husband relocating to Putnam County, Tennessee or another location. As *Schremp* explained, new spouses have to make many choices, one of which is where they desire to reside. 2000 WL 1839127 at *2. Furthermore, if one of them is a parent residing in Tennessee, then there is another choice to make and that is whether it is reasonable, or more reasonable, for the husband to

relocate to the wife's community or for the wife to relocate to the husband's community. *Id.* Here, the evidence does not preponderate against the trial judge's finding that it was not reasonable for Mother to relocate with the child to California.

*Mitchell*, 2005 WL 1521850 at *3.

In this case, because the proof did not bear out Mother's other stated purposes, it appears that the main purpose behind Mother's proposed relocation is to reside with her new husband. As noted above, remarriage alone is not a sufficient reason to grant a party's request for relocation. *Id.* This Court has previously explained that in such instances, the analysis will generally focus on whether it is more reasonable for the new spouse to relocate. *Carman v. Carman*, No. M2011-01265-COA-R3-CV, 2012 WL 1048600 at *5 (Tenn. Ct. App. Mar. 26, 2012). In *Carman*, the mother's new husband lived in Canada and claimed he could not relocate to Tennessee because he would have to obtain the proper authorization from the United States Customs and Immigration Services in order to get a job. *Id.* at *6. He cited, as additional reasons, his role as an elder in his local church and his responsibility to care for his elderly mother. *Id.* at *7.

When considering whether it was reasonable for the mother's new spouse to relocate, this Court stated:

> On balance, Mr. Gallant's career, church duties, and his responsibility to his mother are not sufficient to render it unreasonable for Mr. Gallant to relocate to Tennessee to live with his new wife. To the contrary, as the trial court found, it is more reasonable for him to move to Tennessee than for Mother to relocate a distance of 2,700 miles with seven minor children to live with him in Canada.

> Furthermore, these considerations must also be weighed against "the gravity of the loss" of Father's ability to participate fully and meaningfully in the lives of his seven minor children, the youngest of which was less than three years old at the time of the hearing in this matter. Given the distance to Grande Prairie from Hartsville, the difficulties and time and expense to travel to and from Grande Prairie, and the number of children and their ages, we find Father's loss would be grave.

*Id.* at *7-8.

Likewise, in the case at bar, Mother failed to show why she and the children had to

relocate to Wisconsin, rather than Mr. Gast relocating to Tennessee. Mother argues that it is not reasonable for Mr. Gast to move to Tennessee because he would be unable to find similar employment in this state and because he needs to live close to his parents for whom he provides assistance. Mother's contention ignores Mr. Gast's testimony that he did not have to work and that his parents lived independently with minimal assistance from Mr. Gast. We conclude that the evidence does not preponderate against the trial court's finding that Mother's proposed relocation had no reasonable purpose.

### B. Harm to the Children

Having determined that the trial court's finding that Mother's proposed relocation had no reasonable purpose should be affirmed, we do not need to reach the alternate ground for denying Mother's proposed relocation. Therefore, the issue of whether the proposed relocation would pose a threat of specific and serious harm to the children is hereby pretermitted.

### C. Best Interest

Based upon the above findings, the trial court was also statutorily required to determine whether to permit relocation based on the best interest of the children. Tenn. Code Ann. § 36-6-108(e). The court found that it was not in the children's best interest to relocate with Mother to Wisconsin. Having carefully considered the record, we agree.

Pursuant to Tennessee Code Annotated §36-6-108, factors to be considered in a best interest analysis include, but are not limited to, the following:

(1) The extent to which visitation rights have been allowed and exercised;

(2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;

(3) The love, affection and emotional ties existing between the parents and child;

(4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(6) The stability of the family unit of the parents;

(7) The mental and physical health of the parents;

(8) The home, school and community record of the child;

(9) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and

(11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

The evidence established that Father obtained employment in Asheville, North Carolina, with the U.S. Attorney's Office so that he could reside as close as possible to the children. Father indicated at trial that prior to Mother's notice of relocation, he had always been allowed to have as much time with the girls as his schedule and the distance from his home to Mother's would allow. As Father explained, the parties never strictly adhered to the parenting plan until the relocation dispute arose and Mother began to insist upon it. The proof showed that Father has always been significantly involved in the children's lives, attending school events and extra-curricular activities on a regular basis. He and the children have enjoyed a meaningful relationship.

Some proof was presented that Mother had refused to allow Father extra parenting time with the children upon proper notice as provided in their parenting plan; therefore, if she were allowed to relocate, Father questioned whether Mother would comply with the new visitation arrangement. Both parents were able to provide for the children's needs. The children were shown to be bonded with the maternal grandparents, with whom the children and Mother have lived for the last five years. Removing the children from Father and their network of family members in Tennessee and North Carolina would erase the continuity and stability of their present home environment.

Both parents are remarried. The marriages appear stable, although Father's marriage is of greater duration than Mother's. There was no evidence of any mental or physical problems experienced by either parent. The proof demonstrated that the children performed well in school, participated in numerous activities, and were happy and thriving in their

current environment. Although the children did not testify, the parties admitted the children did not wish to relocate.

Based on the facts presented at trial, we conclude that the evidence does not preponderate against the trial court's finding that relocation was not in the children's best interest. The trial court's denial of Mother's request to relocate with the children is affirmed.

## VI. Modification of Permanent Parenting Plan

The trial court further determined that a material change of circumstances had occurred, warranting a modification in the existing permanent parenting plan. The trial court did not, however, make specific findings of fact regarding what constituted the material change of circumstances. In the absence of such findings of fact, this Court may choose to "conduct its own independent review of the record to determine where the preponderance of the evidence lies, without presuming the trial court's decision to be correct." *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934 at *10 (Tenn. Ct. App. July 31, 2013) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999)).

Mother contends that the trial court erred in modifying the parties' existing parenting plan without sufficient proof of a material change of circumstances. As this Court has previously elucidated:

> The evolution of the "material change in circumstances" standard has focused on the criteria for determining whether a particular change in circumstances is "material" enough to require reconsideration of an existing custody or visitation arrangement. In 2002 and 2003, the Tennessee Supreme Court handed down three decisions that clarified the principles associated with the "material change in circumstances" standard. The court emphasized that there are no bright-line rules for determining whether a material change in circumstances has occurred. *Cranston v. Combs*, 106 S.W.3d at 644; *Kendrick v. Shoemake*, 90 S.W.3d at 570; *Blair v. Badenhope*, 77 S.W.3d at 150. The court also explained that several of the many considerations relevant to determining whether a material change in circumstances has occurred include: (1) whether the change occurred after the entry of the order sought to be modified, (2) whether the change was not known or reasonably anticipated when the order was entered, and (3) whether the change is one that affects the child's well-being in a meaningful way. *Cranston v. Combs*, 106 S.W.3d at 644; *Kendrick v. Shoemake*, 90 S.W.3d at 570; *Blair v. Badenhope*, 77 S.W.3d

at 150.

In 2004, the Tennessee General Assembly enacted legislation directed specifically at the "material change in circumstances" standard. Tenn. Code Ann. § 36-6-101(a)(2)(C) provides:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstances affecting the child's best interest. A material change of circumstances does not require a showing of a substantial risk of harm to the child. A material change of circumstances for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting, failure to adhere to the parenting plan; or other circumstances making a change in residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C) is significant in at least two ways. First, it reflects the General Assembly's agreement with the Tennessee Supreme Court's rejection of the earlier decisions by this court that the "material change in circumstances" standard required a showing of substantial risk of harm to the child. *Cranston v. Combs*, 106 S.W.3d at 645. Second, it also reflects the General Assembly's understanding that even changes that could have been reasonably anticipated when the original decree was entered can trigger a reconsideration of custody and visitation.

*Boyer v. Heimermann*, 238 S.W.3d 249, 256-57 (Tenn. Ct. App. 2007).

In the instant action, the proof demonstrated a material change of circumstances affecting the children's best interest, namely significant changes in the parents' living or working conditions that significantly affected parenting, and failure to adhere to the parenting plan. Following the divorce, both parents had remarried, and Mother was commuting back and forth to Wisconsin to see her new husband. At the time of the divorce, Father was on active duty in the military and living in Clarksville. He had since relocated to Asheville, North Carolina, to reside closer to the children. Father removed himself from active duty. Further, Father demonstrated that the parties had not followed the parenting plan

-13-

that was established at the time of their divorce and that he had not been allowed as much parenting time with the children since the dispute over relocation arose. We conclude that these facts were sufficient to find that a material change of circumstances affecting the children's best interest had occurred and that modification of the parenting plan was warranted.

## VII. Modification of Child Support

Mother contends that the trial court erred in adjusting Father's child support obligation without such relief being sought by either party. Mother's argument fails to consider, however, that both parties filed motions prior to trial requesting that the existing permanent parenting plan be modified and that any necessary child support adjustments be made. The trial court properly modified the permanent parenting plan, concomitantly adjusting Father's child support obligation to reflect the correct annual allocation of days with each parent. This issue is without merit.

## VIII. Attorney's Fees

The trial court awarded Father $6,000 as partial reimbursement of his attorney's fees and expenses incurred in this matter. Mother contends that this award was in error because there was no statutory basis for it and because Father has a higher income than Mother.

As Tennessee Code Annotated § 36-6-108(i) provides in pertinent part, "[e]ither parent in a parental relocation matter may recover reasonable attorney fees and other litigation expenses from the parent in the discretion of the court." We review the trial court's decision to award such fees under the abuse of discretion standard. *Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961 at *9 (Tenn. Ct. App. Aug. 9, 2011). "Under this standard of review, we are required to uphold the trial court's ruling 'as long as reasonable minds could disagree about its correctness,' and 'we are not permitted to substitute our judgment for that of the trial court.'" *Id.* (quoting *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007)). In the present case, because reasonable minds could disagree about the correctness of the award, we cannot conclude that the trial court abused its discretion in making this fee award to Father.

## IX. Post-Judgment Facts

A motion was made pursuant to Tennessee Rules of Appellate Procedure 14, asking this Court to consider the post-judgment facts that Father has been temporarily deployed to Egypt and his co-parenting rights have been assigned to his wife and parents during his absence. We find that these facts do not affect the position of the parties or the subject

matter of the action; therefore, we deny consideration of these post-judgment facts. See Tenn. R. App. P. 14 (a). *See, e.g., Town of Dandridge v. Patterson*, 827 S.W.2d 797, 802 (Tenn. Ct. App. 1991).

## X. Conclusion

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Cheree Anne Osborne. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____

THOMAS R. FRIERSON, II, JUDGE