IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 19, 2016 Session

IN RE ESTATE OF TANDY NATHAN DALTON

**Appeal from the Chancery Court for Grainger County**
**No. E-54-09      Telford E. Forgety, Jr., Chancellor**

_____

**No. E2014-02204-COA-R3-CV-FILED-JUNE 28, 2016**

_____

In this probate action, the executrix proposed to distribute the decedent's real and personal property in a manner that she claimed was in accordance with the decedent's Last Will and Testament ("Will"). One beneficiary, one of the decedent's three adult children, objected, claiming that the decedent had granted her an option to purchase one parcel of real property owned by the decedent. The trial court determined that the real property in question was an asset of the probate estate and that the executrix could administer it in accordance with the decedent's Will. The trial court also determined that a settlement agreement executed by the decedent's three children precluded the claim of an option to purchase. The beneficiary appealed. Pursuant to Tennessee Code Annotated § 30-2-301, we vacate the trial court's denial of the beneficiary's requests for an inventory and accountings and remand for further proceedings. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Linda Gass.

Bruce Hill, Sevierville, Tennessee, for the appellee, Barbara Carmichael, Administrator of the Estate of Tandy Nathan Dalton.

## OPINION

### I. Factual and Procedural Background

This appeal presents questions regarding whether the assets of the decedent, Tandy Nathan Dalton ("Decedent"), were properly distributed following his death on October 12, 2009. At the time of his death, Decedent owned four parcels of real property, one of which is referred to by the parties as "Buffalo Farm." Decedent acquired title to Buffalo Farm from one of his three children, Linda Gass, in 1975. Decedent also possessed equipment, vehicles, and other personalty at the time of his death. He held funds in various bank and/or investment accounts as well.

On June 4, 2010, Barbara Carmichael, another of Decedent's three children and executrix of his estate, filed a motion in the Chancery Court for Grainger County, Probate Division ("trial court"), seeking approval of a distribution plan that she claimed was in conformity with Decedent's Will. Ms. Carmichael represented that the total value of the estate was $890,766. She proposed a distribution that would result in each sibling receiving an equal share of cash and property worth approximately $296,922. Ms. Carmichael also stated that the proposed distribution was in accordance with a settlement agreement ("Settlement") entered into by Decedent's three children on July 15, 2009.

Ms. Gass responded to Ms. Carmichael's motion by filing a "Petition to Enforce Agreement and For Other Relief," wherein Ms. Gass alleged that she had an option agreement with Decedent ("Option") providing that she could repurchase the Buffalo Farm at any time for the original purchase price of $34,000. Ms. Gass claimed that the Option originally existed in written form but had been lost. Ms. Gass produced affidavits of two witnesses, however, who claimed to have knowledge of the Option. One affidavit was signed by a former neighbor of Decedent, who stated that Decedent discussed the Option with him on several occasions. The other affidavit was by a friend of Ms. Gass, who represented that he had seen the Option in written form in 1980 or 1981.

On December 15, 2010, Ms. Carmichael filed a motion for summary judgment and a statement of undisputed facts, submitted pursuant to Tennessee Rule of Civil Procedure 56.03. In the statement of facts, Ms. Carmichael pointed out Ms. Gass's admission that there existed no written document manifesting the Option. Ms. Carmichael also asserted that Ms. Gass had admittedly never exercised the Option prior to Decedent's death and thereafter had never exercised the Option in writing. Ms. Carmichael further stated that Ms. Gass had not filed a claim against Decedent's estate and that the Settlement executed by the siblings did not mention any such Option.

Ms. Carmichael attached to the motion an affidavit of Jerry Dalton, the third sibling, who stated that Ms. Gass never mentioned the Option to him until following Decedent's death and that Decedent also had never mentioned the Option. Mr. Dalton further stated that prior to Decedent's death, Decedent conveyed title to Buffalo Farm to the three siblings as tenants in common. According to Mr. Dalton, the siblings subsequently entered into the Settlement, which required them to quitclaim their interest in Buffalo Farm back to Decedent. The Settlement further provided that all of Decedent's assets would be divided equally among the siblings.

Ms. Carmichael also submitted her own affidavit, in which she stated that Ms. Gass mentioned the Option to Ms. Carmichael in 2008 but never attempted to exercise it. Ms. Carmichael indicated that she did not believe the Option existed because Decedent's Will bequeathed all of his property to the siblings equally. Ms. Carmichael confirmed that Decedent, prior to his death, conveyed Buffalo Farm to the three siblings as tenants in common, but Ms. Carmichael maintained that the siblings subsequently conveyed the property back to Decedent in accordance with the Settlement. Ms. Carmichael stated that Ms. Gass never mentioned the Option at that time.

Ms. Gass filed a response to the statement of undisputed facts, asserting that a written document embodying the Option had existed and that she had discussed the Option with her siblings before their father's death. Ms. Gass attached her own affidavit, wherein she stated that her siblings knew of the Option because it had been discussed at a family meeting in 1997. Ms. Gass further asserted that her brother had seen the written document containing the Option and that such written document had later disappeared.

The trial court conducted a hearing on March 27, 2011, regarding the motion for summary judgment. In its subsequent written order, the court noted that it had to presume that the Option existed for summary judgment purposes even though Ms. Gass was unable to produce any documentary evidence in support. The court determined that the Settlement barred Ms. Gass from filing a claim seeking to enforce the Option. The court cited the relevant language of the Settlement, which clearly provided that the parties intended a complete resolution of the estate distribution and further provided that they would not file suit to challenge the Will. As the court noted, the Settlement also stated that the parties

> forever discharge[d] each party to this Agreement . . . of and from all actions, causes of action, debts, claims, and demands for, upon, or by reason of any loss, damage, injury, or expense which the First Parties now have or which may hereafter accrue on account of or in any way growing out of any and all relationships, contracts, course of dealings, promises, and expectation, known and unknown, foreseen and unforeseen, and the

3

consequences thereof resulting or to result from any of the foregoing.

Based upon the language of the Settlement, the trial court granted summary judgment in favor of Ms. Carmichael as to the Option and dismissed Ms. Gass's petition seeking to enforce the Option.

On April 27, 2012, Ms. Carmichael filed a motion seeking injunctive relief, stating that she had located a purchaser for the Buffalo Farm but that Ms. Gass refused to execute documents to effectuate the sale. Ms. Carmichael quoted from a provision in Decedent's Will, which directed that the Buffalo Farm be sold and the proceeds divided equally between the siblings. Ms. Carmichael sought an order from the trial court compelling Ms. Gass to cooperate with the sale of said real property. Ms. Gass, acting *pro se* despite her earlier representation by counsel, filed a letter with the trial court on October 16, 2012, objecting to the sale of Buffalo Farm. Acknowledging that the court had granted Ms. Carmichael the authority to sell Buffalo Farm, Ms. Gass asserted that she was "appealing" that decision.

On October 30, 2012, the trial court entered an order indicating that a hearing was conducted on October 15, 2012, regarding Ms. Carmichael's April motion seeking injunctive relief. The court recited that it had considered the statements of counsel and Ms. Gass along with the record as a whole. The court noted that Decedent's Will directed Ms. Carmichael to sell Buffalo Farm and that Ms. Carmichael had accepted an offer of purchase. The court found that, pursuant to Tennessee Code Annotated § 31-2-103, Buffalo Farm was a probate estate asset and Ms. Carmichael was empowered by Decedent's Will to sell the property without approval from the other heirs.

Ms. Gass thereafter attempted to appeal the trial court's interlocutory ruling; however, this Court dismissed that appeal due to lack of a final judgment. The trial court, by subsequent order, overruled Ms. Gass's motion seeking an inventory because Decedent's Will waived the filing of an inventory. By that order, the trial court also denied all other pending motions filed by Ms. Gass without enumerating them.

On March 10, 2014, the trial court entered an order affirming the property transfers proposed by Ms. Carmichael in the distribution plan. The court also authorized Ms. Carmichael to execute a personal representative's deed and any other necessary documents to effectuate the sale of Buffalo Farm and to distribute the proceeds of such sale in accordance with Decedent's Will. In accordance with Tennessee Rule of Civil Procedure 54.02, the court designated the March 10, 2014 order, as well as its earlier orders determining Buffalo Farm to be a probate asset and granting partial summary judgment, as immediately appealable, finding no just reason for delay.

The trial court subsequently set aside the March 10, 2014 order due to lack of notice to Ms. Gass's counsel. The court entered an identical order on October 6, 2014. Ms. Gass timely appealed.

## II. Issues Presented

In her initial and reply briefs, Ms. Gass presented several issues for our review, many of which were unsupported by legal argument, as further discussed in a subsequent section of this opinion. Pursuant to the requirements of Tennessee Rule of Appellate Procedure 27 and Rule 6 of the Rules of the Court of Appeals of Tennessee, we determine that only the following issues were properly raised by Ms. Gass:

1. Whether the trial court erred by ruling that Buffalo Farm, which was subject to Ms. Gass's claimed Option, was part of the probate estate.

2. Whether the trial court lacked authority to order that title to real property be divested out of certain heirs and vested in others when such real property was not an asset of the estate.

3. Whether the trial court erred by dismissing Ms. Gass's requests for an inventory and accounting of estate assets.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than

make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. [574,] 586, 106 S.Ct. 1348 [1986]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

Additionally, as this Court has explained with regard to self-represented litigants:

6

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow,* 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

IV. Deficiencies in Appellant's Brief

Ms. Gass filed an initial brief in this matter that contained sixty-five pages of facts and only six pages of legal argument, despite the fact that nine issues were listed for review. With regard to the requirements for an appellant's brief, Tennessee Rule of Appellate Procedure 27 provides in pertinent part:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

* * *

(6) A statement of facts, setting forth the facts relevant to the issues presented for review <u>with appropriate references to the record</u>;

(7) An argument, which may be preceded by a summary of argument, setting forth:

> (A) <u>the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on</u>; and

> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues) . . . .

(Emphasis added.)

Similarly, Rule 6 of the Rules of the Court of Appeals of Tennessee provides in pertinent part:

> (a) Written argument in regard to each issue on appeal shall contain:

> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

> (3) A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

> (4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

> (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a

8

reference to the page or pages of the record where evidence of such fact is recorded.

Ms. Gass's initial brief contained numerous deficiencies with regard to the above-listed requirements. The sixty-five-page statement of facts contained in her brief contained very few references to the record. *See* Tenn. R. App. P. 27. The argument section contains only six total pages, also exhibiting few record citations and even fewer citations to authority. *Id.*; *see also* Tenn. Ct. App. R. 6. With regard to several of the issues raised in her initial brief, Ms. Gass failed to demonstrate that the errors alleged were ever brought to the attention of the trial court. *See* Tenn. Ct. App. R. 6. In addition, with regard to several of the issues raised, Ms. Gass did not provide any documentation in the appellate record to support her contentions. *Id.* As this Court has previously explained with regard to deficiencies in an appellate brief:

> Our Courts have "routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as described by Rule 27(a)(7) constitutes a waiver of the issue[s] [raised]." *Bean v. Bean,* 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). In *Bean,* we went on to hold that "an issue is waived where it is simply raised without any argument regarding its merits." *Id.* at 56; *see also Newcomb v. Kohler Co.,* 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the failure of a party to cite to any authority or to construct an argument regarding his or her position on appeal constitutes waiver of that issue). As we stated in *Newcomb,* a "skeletal argument that is really nothing more than an assertion will not properly preserve a claim." *Newcomb,* 222 S.W.3d at 400. It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument. *Bean,* 40 S.W.3d at 56.
>
> Despite the fact that [the appellant's] brief is woefully inadequate, there are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits. This is especially true in cases involving domestic relations where the interests of children are involved. However, in order for this Court to properly review the trial court's actions, the record must be in a proper posture to provide us a meaningful review. This Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate. *Jennings v. Sewell-Allen Piggly Wiggly,* 173 S.W.3d 710 (Tenn. 2005).

*Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009).

In the case at bar, some of the issues raised by Ms. Gass address the validity of Decedent's Will and whether the testator's intent was followed. We note that Decedent's Will does not appear in the record, nor does any documentation demonstrating that these issues were raised at the trial court level. As such, we deem these issues waived. *See Chiozza*, 315 S.W.3d at 489; *see also Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991). Similarly, issues raised regarding "shared water at the homeplace" and promissory notes owed to Decedent by Ms. Gass's siblings were never ruled upon by the trial court. As such, this Court has no authority to address such issues on appeal. *See Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."). Accordingly, we will address only those issues that are properly before this Court.

## V. Buffalo Farm

Ms. Gass contends that the Settlement is not dispositive of her claim regarding Buffalo Farm because Buffalo Farm was not an asset of the probate estate. The Settlement provides in pertinent part:

> WHEREAS, the parties to this agreement, Jerry Dalton, Linda Dalton Gass and Barbara Carmichael, wish to resolve all issues and matters related to the pending conservatorship litigation in Grainger County, Tennessee, regarding their father Tandy Dalton; issues and matters relating to the legality and propriety of certain real estate transfers made shortly before competing petitions for conservatorship were filed, and issues and matters regarding the treatment of their father's estate and their relative interests therein;
>
> WHEREAS, the parties recognize that there is a great uncertainty to matters pending in litigation, and all parties believe and agree that they are receiving fair and valuable consideration by entering into this agreement,
>
> WHEREAS, the parties wish to give full effect and honor to their father's wishes that his children receive equal distributions of his estate upon his passing,
>
> WHEREAS, the parties agree as follows:
>
> * * *

8. Jerry Dalton, Linda Dalton Gass, and Barbara Carmichael agree to execute any and all documents necessary to set aside the December 30, 2008 deed between their father, Tandy Dalton, whereby each party received a portion of the real property known as the "Buffalo Farm" property.

* * *

11. It is the intention of the parties that the aforementioned real properties are to remain in the estate of Tandy Dalton to be used for his care.

* * *

17. The remaining assets of the Tandy Dalton estate shall be equally divided among the parties, per stirpes.

18. The parties agree that they will not file any action individually or through agents, successors or assigns, to challenge the last will and testament of Tandy Dalton in existence at the time of the signing of this agreement, but rather they will abide by the terms of this agreement to resolve claims related to the distribution of his estate.

19. The Parties . . . hereby release and forever discharge each party to this Agreement . . . of and from all actions, causes of action, debts, claims, and demands for, upon, or by reason of any loss, damage, injury, or expense which the First Parties now have or which may hereafter accrue on account of or in any way growing out of any and all relationships, contracts, course of dealings, promises, and expectation, known and unknown, foreseen and unforeseen, and the consequences thereof resulting or to result from any of the foregoing.

Ms. Gass contends that the trial court erred by granting partial summary judgment in favor of Ms. Carmichael regarding the Option. According to Ms. Gass, she demonstrated the existence of a genuine issue of material fact that should preclude summary judgment by proving the parameters and terms of the Option. Ms. Gass further argues that Buffalo Farm, as subject to the Option, is not a part of Decedent's estate and therefore not controlled by the Settlement. Ms. Gass cites no authority for this proposition.

Assuming that the Option existed as Ms. Gass claims, as we must for the purposes of summary judgment, the subject property would still be an asset of Decedent's estate to

be administered according to his Will. *See, e.g., Lynch v. Burger*, 168 S.W.2d 487, 488 (Tenn. Ct. App. 1942). Tennessee Code Annotated § 31-2-103 (2015) controls the vesting of real property following a death, providing in pertinent part:

> The real property of an intestate decedent shall vest immediately upon death of the decedent in the heirs as provided in § 31-2-104. The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative.

In the case at bar, the record reflects a finding by the trial court that Decedent's Will designated Buffalo Farm as an asset to be sold by the executrix with the proceeds to be divided equally among the siblings. This Court has no basis upon which to review that determination because a copy of the Will does not appear in the record. *See Word v. Word*, 937 S.W.2d 931, 933 (Tenn. Ct. App. 1996) ("A party raising issues on appeal is responsible for furnishing the appellate court with a record that will enable that court to reach the issues raised."). Because Buffalo Farm was owned by Decedent at the time of his death and inasmuch as the trial court found that Decedent's Will directed Ms. Carmichael to administer Buffalo Farm as part of the estate, the trial court properly determined it to be an asset of Decedent's estate even if a valid option to purchase existed. *See Lynch*, 168 S.W.3d at 488. As such, pursuant to the express language of the Settlement, Buffalo Farm would be an "asset[] of the Tandy Dalton estate [to] be equally divided among the parties, per stirpes."

To the extent that Ms. Gass is arguing that she had some greater interest in the subject property than her siblings by reason of the unexercised Option, we disagree. *See Sager v. Rogers*, No. C.A. 115, 1987 WL 6718 at *2 (Tenn. Ct. App. Feb. 20, 1987) ("[A]n option creates no interest in land, legal or equitable, until exercised."); *but cf. Town of Dandridge v. Patterson*, 827 S.W.2d 797, 800 (Tenn. Ct. App. 1991) ("Although an option to purchase might not create a present interest in land . . . it is such an interest or right which would preclude [a governmental entity] from proceeding with its condemnation suit.").

We further note that Ms. Gass describes the Option as allowing her to repurchase Buffalo Farm from her parents <u>at any time</u> for the original purchase price of $34,000. As this Court has previously elucidated with regard to options, however:

> An option is an offer to sell, irrevocable <u>for a specified period</u>. It confers on the optionee the right to purchase <u>within the stipulated time</u> subject to the terms of the option.

An option cannot be enforced as a contract until exercised by acceptance. The acceptance must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation, and according to the terms of the option. An acceptance of an option must be such a compliance with the conditions as to bind both parties, and if it fails to do so it binds neither.

*Pinney v. Tarpley*, 686 S.W.2d 574, 580 (Tenn. Ct. App. 1984) (internal citations omitted). In the instant action, according to Ms. Gass's claims, the Option contained no time frame within which it had to be exercised. Although there exists some persuasive authority for implying a reasonable time for the duration of such an option, *see Mohr Park Manor, Inc. v. Mohr*, 424 P.2d 101, 106 (Nev. 1967), the Option herein, which was allegedly granted in 1975, was not accepted by Ms. Gass before Decedent's death, a time period spanning over thirty years.

As previously explained, the Settlement also reflects that the siblings agreed not to file any action challenging the terms of Decedent's Will. Rather, the siblings agreed to abide by the terms of the Settlement to resolve claims regarding the distribution of Decedent's estate. The Settlement further provides that it was the intention of Decedent "that his children receive equal distributions of his estate upon his passing." Moreover, Buffalo Farm was expressly mentioned as one such asset in the Settlement. Ms. Gass executed the Settlement and evinced her agreement to it without mentioning or attempting to exercise the Option at that time. Had Ms. Gass intended to exercise or enforce the Option, she should have preserved her right to do so in the Settlement, which expressly provides that the siblings' intent in executing it was to "resolve all . . . issues and matters regarding the treatment of their father's estate and their relative interests therein." We therefore conclude that the trial court properly determined that Ms. Gass's claim regarding Buffalo Farm was precluded by her execution of the Settlement and that Buffalo Farm was an asset of Decedent's estate.

## VI. Other Real Property

Ms. Gass contends that the trial court was without authority to enter the October 6, 2014 order purporting to vest title to the real properties that belonged to Decedent at the time of his death in certain heirs. Ms. Gass posits that "real property vest[s] immediately in the devisees named in the will unless it specifically directs that the property be part of the estate under control of the executor." Therefore, according to Ms. Gass, the real properties owned by Decedent at his death vested immediately in the three siblings as tenants in common and were not assets of the probate estate subject to distribution. We disagree.

As noted by the trial court, Tennessee Code Annotated § 31-2-103 controls the vesting of real property following the death of a testator, providing that "real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, <u>unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative</u>" (emphasis added). Pursuant to the express language of this statutory provision, the Decedent's real property would not immediately vest in the beneficiaries named in the Will if that testamentary instrument directed that the real property would be administered as part of the estate, subject to the control of the personal representative. We emphasize that a copy of the Will does not appear in this record.

In its October 6, 2014 final order, however, the trial court noted that certain transfers of property were made by Ms. Carmichael in the distribution of Decedent's estate, pursuant to the Executrix's deeds. These conveyances were then ratified by the court in that order, with the court expressly noting that "[t]he conveyances by the Executrix described in paragraph 20 above are consistent with and accomplish the terms of the Last Will and Testament of Tandy Dalton . . . ." Because the record does not contain a copy of the Will, this Court cannot review the trial court's determination in this regard. *See Word*, 937 S.W.2d at 933 ("A party raising issues on appeal is responsible for furnishing the appellate court with a record that will enable that court to reach the issues raised."). We therefore conclude that this issue has been waived.

## VII. Inventory and Accountings

Finally, Ms. Gass argues that the trial court erred by refusing her requests for an inventory and accountings regarding the property in Decedent's estate. She relies upon Tennessee Code Annotated § 30-2-301 (2015), which provides in pertinent part:

> When the will of the deceased excuses the requirement for making and filing an inventory of the estate, or when excused by all of the residuary distributees or legatees, no inventory shall be required of a solvent estate, <u>unless demanded by any residuary distributee or legatee of the estate</u>.

(Emphasis added.) Ms. Gass asserts that she, as a residuary legatee, requested an inventory, which was denied by the trial court. Although Ms. Gass's request does not appear in the record, the trial court noted in its April 25, 2013 order that such a request had been made and was overruled. The court found that Decedent's Will waived the filing of an inventory.

14

Regarding waiver of accountings, Tennessee Code Annotated § 30-2-601(a)(4) (2015) provides in relevant part:

[D]etailed accountings of solvent estates may be waived if:

(A) The decedent by the decedent's will waived the requirement for the personal representative to make court accountings of the estate; or

(B)  All of the distributees of the residue file with the clerk of the court waivers excusing the personal representative from filing all court accountings.

This Court has previously construed the statutory requirements regarding waivers of inventory and accountings as follows:

Regarding waivers of inventories, section 30-2-301(a) of the Tennessee Code provides that no inventory is required of a solvent estate "when excused by all of the residuary distributees or legatees, . . . unless demanded by any residuary distributee or legatee of the estate."  Tenn. Code Ann. § 30-2-301(a) (Supp. 2000).  Residuary, in this context, means "receiving or entitled to the residue," and residue is "[t]he surplus of a testator's estate remaining after all the debts and particular legacies have been discharged."  *Black's Law Dictionary* 1177 (5th ed. 1979).  A distributee is "[a]n heir; a person entitled to share in the distribution of an estate," and a legatee is "[t]he person to whom a legacy in a will is given." *Id.* at 426, 808. . . .  Because this court finds that [the decedent's] children are residuary distributees/legatees, and because these children demanded an inventory, we find that [the executor] did not have the legal right to waive the inventory requirement of section 30-2-301(a) of the Tennessee Code.

An accounting may be waived if the decedent, by and through his will, waived such requirement, or if all of the residuary distributees file a waiver of the accounting with the clerk of the court.  *See* Tenn. Code Ann. § 30-2-601(a)(1)-(2) (Supp. 2000).  The accounting requirement in the instant case was not waived by [the decedent] in his Last Will and Testament, nor was it waived by both [the executor] and the beneficiaries through a filing with the court clerk.  Accordingly, [the executor] did not have a legal right to waive the accounting requirement.

*Estate of Doyle v. Hunt*, 60 S.W.3d 838, 846 (Tenn. Ct. App. 2001).  In *Estate of Doyle*, this Court reinforced the plain-language interpretation of Tennessee Code Annotated §

15

30-2-301 that the inventory requirement cannot be waived if an inventory is demanded by a residuary distributee/legatee. *See* Tenn. Code Ann. § 30-2-301. Accountings, however, may be waived either by a decedent's will or by agreement of all residuary distributees. *See* Tenn. Code Ann. § 30-2-601(a)(4).

In the case at bar, the trial court found that Decedent's Will waived the requirement of filing an inventory. The trial court made no findings, however, regarding the mandatory language of Tennessee Code Annotated § 30-2-301, which requires that an inventory be filed if demanded by a residuary distributee or legatee, or whether Ms. Gass qualified as such under the Decedent's Will. Because a copy of the Will is not contained in the record, this Court cannot determine whether Ms. Gass is a residuary distributee or legatee; however, if she is, the trial court erred by failing to honor her demand for an inventory. We therefore vacate the trial court's denial of Ms. Gass's request for an inventory. We remand this case to the trial court for a finding regarding whether Ms. Gass would be considered a residuary distributee or legatee pursuant to Decedent's Will. If the court makes an affirmative finding in this regard, then the court should order Ms. Carmichael to file an inventory pursuant to Tennessee Code Annotated § 30-2-301.

Inasmuch as the case is being remanded for this limited purpose and Decedent's Will is not in the record for this Court to make a determination regarding whether accountings were waived by the Decedent in his Will, we also direct the trial court upon remand to make such determination. If Decedent did not waive the filing of accountings in his Will, then the court should honor the request of any residuary distributee for such accountings pursuant to Tennessee Code Annotated § 30-2-601(a)(4).

## VIII. Conclusion

For the foregoing reasons, we vacate the trial court's denial of Ms. Gass's requests for an inventory and accountings. We remand this case to the trial court for a determination regarding those requests consistent with this opinion. The trial court's judgment is affirmed in all other respects. Costs on appeal are assessed one-half to the appellant, Linda Gass, and one-half to the appellee, the Estate of Tandy Nathan Dalton.

_____
THOMAS R. FRIERSON, II, JUDGE